EXHIBIT B

CONFIRMATION ORDER AND PLAN

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x

|  |  |
|---|---|
| *In re:* | : Chapter 11 |
|  | : |
| **FBI WIND DOWN, INC.** | : Case No. 13-12329 (CSS) |
| (F/K/A Furniture Brands International, Inc.), | : |
| *et al.,* | : Jointly Administered |
|  | : |
| Debtors.[1] | : Docket Ref. No. 1799 |

---------------------------------------------------------------x

## ORDER CONFIRMING DEBTORS SECOND AMENDED JOINT PLAN OF LIQUIDATION OF FBI WIND DOWN, INC. AND ITS SUBSIDIARIES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

FBI Wind Down, Inc. (f/k/a Furniture Brands International, Inc.) ("FBI") and its debtor

affiliates, as debtors in possession in the above-captioned Chapter 11 Cases (collectively, the

"Debtors"), having proposed and filed the *Second Amended Joint Plan of Liquidation of FBI*

*Wind Down, Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code*, dated as of

July 9, 2014 [Docket No. 1799] (as modified, amended, or supplemented from time to time, the

"Plan") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy

Court"); and the Bankruptcy Court having entered, after due notice and a hearing, the *Order*

*Pursuant to Bankruptcy Code Sections 105, 502, 1125, 1126 and 1128, Bankruptcy Rules 2002,*

*3003, 3017, 3018, and 3020, and Local Rules 3017-1, 3018-1, and 3020-1: (I) Approving the*

*Debtors Disclosure Statement; (II) Establishing Voting Record Date; (III) Approving Solicitation*

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are: FBI Wind Down, Inc. (7683); AT Wind Down, Inc. (7587); BFI Wind Down, Inc. (3217); BHF Wind Down, Inc. (8844); BR Wind Down, Inc. (8843); BT Wind Down, Inc. (1721); FBH Wind Down, Inc. (2837); FBO Wind Down, Inc. (4908); FBRC Wind Down, Inc. (1288); HFI Wind Down, Inc. (7484); HR Wind Down, Inc. (6125); HT Wind Down, Inc. (4378); LFI Wind Down, Inc. (5064); LHFR Wind Down, Inc. (9085); LV Wind Down, Inc. (8434); MSFI Wind Down, Inc. (7486); TFI Wind Down, Inc. (6574); THF Wind Down, Inc. (3139); and TR Wind Down, Inc. (6174). The Debtors' corporate headquarters is located at 1 N. Brentwood Blvd., St. Louis, Missouri 63105.

*Packages and Distribution Procedures; (IV) Approving Forms of Ballots and Establishing Procedures for Voting on Joint Plan of Liquidation; (V) Approving Forms of Notices to Non-Voting Classes Under Plan; (VI) Establishing Voting Deadline to Accept or Reject Plan; (VII) Approving Procedures for Vote Tabulations; and (VIII) Establishing Confirmation Hearing Date and Notice and Objection Procedures Thereof,* dated May 29, 2014 [Docket No. 1657] (the "Disclosure Statement Order"); and the *Disclosure Statement for the Amended Joint Plan of Liquidation of FBI Wind Down, Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code* [Docket No. 1663] (as amended, the "Disclosure Statement") having been approved by this Court and the Plan and the Solicitation Packages (as defined below) having been duly transmitted to holders of Claims[2] entitled to vote thereon as provided in the Disclosure Statement Order; and due notice of (i) entry of the Disclosure Statement Order, (ii) the Confirmation Hearing, and (iii) the deadline for voting on, and/or objecting to the Plan having been provided to holders of Claims against and Equity Interests in the Debtors and other parties in interest in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules; and such notice being sufficient under the circumstances and no other or further notice being required; and objections (the "Objections") to the Plan having been interposed by various parties; and the Debtors having filed the Plan Supplement on June 27, 2014 [Docket No. 1776] (as supplement on July 9, 2014 [Docket No. 1807] and July 11, 2014 [Docket No. 1832]) in accordance with the provisions of the Plan and such filing and notice thereof being sufficient under the circumstances and no further notice being required; and upon consideration of the (i) *Memorandum of Law in Support of Confirmation of the Debtors' Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan and the Disclosure Statement (as applicable).

1805] (the "Confirmation Brief"); (ii) the *Declaration of Stephenie Kjontvedt on Behalf of Epiq Bankruptcy Solutions, LLC Regarding Voting and Tabulation of Ballots Accepting and Rejecting the Amended Joint Plan of Liquidation of FBI Wind Down, Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code* [Docket No. 1803] (the "Vote Certification"); (iii) the *Declaration of Meredith Graham in Support of Confirmation of the Second Amended Joint Plan of Liquidation of FBI Wind Down, Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code* [Docket No. 1801] (the "Graham Declaration"); (iv) the *Declaration of Shawn Hassel in Support of Confirmation of the Debtors' Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. 1802] (the "Hassel Declaration," and together with the Vote Certification, the "Declarations"); and the *Statement of the Official Committee of Unsecured Creditors in Support of Confirmation of the Debtors' Second Amended Joint Plan of Liquidation* [Docket No. 1812]; and the hearing to consider confirmation of the Plan having been held before the Bankruptcy Court on July 14, 2014 (the "Confirmation Hearing"); and the Bankruptcy Court having reviewed and considered the Plan, the Plan Supplement, the Disclosure Statement, the Disclosure Statement Order, the Confirmation Brief, the Declarations, each of the Objections which has not been withdrawn or otherwise resolved, and all related documents; and the appearance of all interested parties having been duly noted in the record of the Confirmation Hearing, including the Declarations filed and testimony therein and the exhibits admitted into evidence; and upon all of the proceedings had before the Bankruptcy Court and upon the entire record of the Confirmation Hearing; and the Bankruptcy Court having determined based upon all of the foregoing that the Plan should be confirmed, as reflected by the Bankruptcy Court's rulings made herein and on the record of the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor,

01:15721099.3

IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED, AND DECREED, AS FOLLOWS:

## FINDINGS OF FACT

A.   <u>Findings and Conclusions</u>. The findings and conclusions set forth in this Order and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.   <u>Jurisdiction</u>.  The Court has jurisdiction over the Debtors' Chapter 11 Cases, confirmation of the Plan and the Objections pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District of Delaware, dated as of February 29, 2012.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order confirming the Plan. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.   <u>Commencement and Joint Administration of the Debtors' Chapter 11 Cases</u>.  On September 9, 2013 (the "<u>Petition Date</u>") the Debtors commenced the Chapter 11 Cases.  By prior order of the Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  The Debtors have managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been appointed in these Chapter 11 Cases.

D.   <u>Official Committee of Unsecured Creditors</u>.  On September 18, 2013, the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") appointed an

official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

E.    Appointment of Fee Examiner. On November 5, 2013, the Bankruptcy Court ordered the appointment of a fee examiner [Docket No. 576].

F.    Judicial Notice. The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

G.    Burden of Proof.  The Debtors have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

H.    Resolution of Objections.  As presented at the Confirmation Hearing and as provided in this Order and on the record at the Confirmation Hearing, the consensual resolutions of certain Objections satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and are in the best interests of the Debtors and are hereby approved.  All Objections that were not resolved by agreement at or prior to the Confirmation Hearing are overruled.

I.    Solicitation and Notice.  On May 29, 2014, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things, approved the Disclosure Statement, finding that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code, and established procedures for the Debtors' solicitation and tabulation of votes on the Plan. The (a) Notice of Confirmation Hearing, (b) Disclosure Statement (with a copy of the Plan attached thereto), (c) Disclosure Statement Order (without attachments), (d)

01:15721099.3

letter from the Creditors' Committee in support of the Plan, (e) notices of non-voting statuses, and (f) appropriate ballots for voting on the Plan (the "Ballots") (collectively, the "Solicitation Packages") were served in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order (the "Solicitation"). As described in the Disclosure Statement Order, and as set forth in the Vote Certification and the *Affidavit of Service of Solicitation Materials* by Epiq Bankruptcy Solutions, LLC ("Epiq"), filed at Docket No. 1778, (i) the service of the Solicitation Packages was adequate and sufficient under the circumstances of these Chapter 11 Cases, and (ii) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings and matters described in the Disclosure Statement Order was timely provided in compliance with the Bankruptcy Rules and provided due process to all parties in interest. No other or further notice is required.

J.      Voting. Votes on the Plan were solicited after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the Vote Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.

K.      Plan Supplement. On June 27, 2014, the Debtors filed that certain supplement to the Plan [Docket No. 1776] (as supplemented and amended, the "Plan Supplement"), which includes the following documents: (1) the form of Request for Payment of Administrative Expense Claims Arising Between March 1, 2014 and the Effective Date of the Plan; (2) the form of Liquidating Trust Agreement (Including Retention Agreement with Proposed Liquidating Trustee and Identity of Members of Liquidating Trust Oversight Committee); (3) the form of Amended and Restated Certificate of Incorporation of FBI Wind Down, Inc.; (4) the form of

Amendment to Bylaws of FBI Wind Down, Inc.; (5) the form of Certificate of Dissolution for Subsidiary Debtors (Delaware); (6) the form of Certificate of Dissolution for Subsidiary Debtors (Mississippi); (7) the form of Certificate of Dissolution for Subsidiary Debtors (North Carolina); (8) the form of Certificate of Dissolution for Subsidiary Debtors (Virginia); and (9) the List of Executory Contracts and Unexpired Leases to Be Assumed Under the Plan. On July 9, 2014, the Debtors filed a supplement to the Plan Supplement which contained (1) the modified form of Liquidating Trust Agreement, (2) the modified form of Amended and Restated Certificate of Incorporation of FBI Wind Down, Inc., (3) the modified form of Amendment to Bylaws of FBI Wind Down, Inc., and (4) the form of Notice of Effective Date. All such materials and documents comply with the terms of the Plan, and the filing and notice of such materials and documents is due and sufficient in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and no other or further notice is or shall be required.

## MODIFICATIONS TO THE PLAN

L.    _Modification._  Subsequent to Solicitation, on July 9, 2014, the Debtors filed an amendment to the Plan [Docket No. 1799], which includes certain modifications to the Plan to, among other things, address objections raised by various parties (the "Modifications"). Pursuant to section 1127(a) of the Bankruptcy Code, the Modifications are made a part of the Plan.

M.    _Notice of Modifications._ The filing of the Plan and the description of the Modifications on the record at the Confirmation Hearing provided due and sufficient notice to all parties in interest under the circumstances of these Chapter 11 Cases.

N.    _Deemed Acceptance of Plan as Modified._  The Modifications to the Plan are either (i) immaterial or do not adversely affect the treatment of any Claim against or Equity Interest in the Debtors under the Plan, or (ii) the adversely affected parties have consented to the

01:15721099.3

7

Modifications.  Therefore, in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan, as modified by the Modifications.  No holder of a Claim or Equity Interest that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Modifications.  The Modifications neither require additional disclosure under section 1125 of the Bankruptcy Code nor re-solicitation of votes on the Plan under section 1126 of the Bankruptcy Code.

    O.      <u>Compliance with Section 1127 of the Bankruptcy Code</u>.  The Modifications incorporated into the Plan comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

## COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE

    P.      <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code, thus satisfying section 1129(a)(1) of the Bankruptcy Code.

    Q.      <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>.  In addition to Administrative Expense Claims, Adequate Protection Claims, and Priority Tax Claims, which need not be classified, Article III of the Plan designates the following sixteen (16) Classes of Claims and one Class of Equity Interests: Class 1 (Priority Non-Tax Claims), Class 2 (Secured Tax Claims), Class 3 (Other Secured Claims), Class 4A (General Unsecured Claims against FBI Debtors), Class 4B (General Unsecured Claims against Broyhill Debtors), Class 4C (General Unsecured Claims against Lane Debtors), Class 4D (General Unsecured Claims against Thomasville Debtors), Class 4E (General Unsecured Claims against HDM Debtors), Class 4F

01:15721099.3

(General Unsecured Claims against AT), Class 5A (Convenience Claims against FBI Debtors), Class 5B (Convenience Claims against Broyhill Debtors), Class 5C (Convenience Claims against Lane Debtors), Class 5D (Convenience Claims against Thomasville Debtors), Class 5E (Convenience Claims against HDM Debtors), Class 5F (Convenience Claims against AT), Class 6 (Subordinated Securities Claims), and Class 7 (Equity Interests in Debtors). Each of the Claims or Equity Interests, as the case may be, in each particular Class is substantially similar to the other Claims or Equity Interests in such Class. Valid business, legal and factual reasons exist for separately classifying the various Claims and Equity Interests pursuant to the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

R.      Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Article III of the Plan specifies that Class 1 (Priority Non-Tax Claims), Class 2 (Secured Tax Claims), and Class 3 (Other Secured Claims) are unimpaired under the Plan. The Plan therefore satisfies section 1123(a)(2) of the Bankruptcy Code.

S.      Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Article III of the Plan designates Class 4A (General Unsecured Claims against FBI Debtors), Class 4B (General Unsecured Claims against Broyhill Debtors), Class 4C (General Unsecured Claims against Lane Debtors), Class 4D (General Unsecured Claims against Thomasville Debtors), Class 4E (General Unsecured Claims against HDM Debtors), Class 4F (General Unsecured Claims against AT), Class 5A (Convenience Claims against FBI Debtors), Class 5B (Convenience Claims against Broyhill Debtors), Class 5C (Convenience Claims against Lane Debtors), Class 5D (Convenience Claims against Thomasville Debtors), Class 5E (Convenience Claims against HDM Debtors), Class 5F (Convenience Claims against AT), Class 6

01:15721099.3

9

(Subordinated Securities Claims), and Class 7 (Equity Interests in Debtors) as impaired, and Sections 5.4 through 5.17 of the Plan specify the treatment of Claims and Equity Interests in such Classes. The Plan therefore satisfies section 1123(a)(3) of the Bankruptcy Code.

T.     No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment on account of such Claim or Equity Interest.  The Plan therefore satisfies section 1123(a)(4) of the Bankruptcy Code.

U.     Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan and the various documents set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan as required by section 1123(a)(5) of the Bankruptcy Code.  The Plan therefore satisfies section 1123(a)(5) of the Bankruptcy Code.

V.     Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)). The Plan provides that (i) on the Effective Date, the Equity Interests in the Debtors shall be cancelled and the holders of the Equity Interests shall not be entitled to, and shall not receive or retain, any property on account of such Equity Interests under the Plan, (ii) as of the Effective Date, all Equity Interests in all of the Debtors, and any and all warrants, options, rights, or interests with respect to such Equity Interests that have been issued, could be issued, or that have been authorized to be issued but that have not been issued, shall be deemed cancelled and extinguished without any further action of any party; provided, however, that FBI shall issue one (1) share of new common stock to the Liquidating Trust.  The amended certificate of incorporation of FBI, which was included in the Plan Supplement, includes a provision prohibiting the issuance of non-voting equity securities in accordance with section 1123(a)(6) of

the Bankruptcy Code. As such, the Plan does not provide for the issuance of nonvoting equity securities, and the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

W.      Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). Section 7.5 of the Plan provides that the Liquidating Trustee will have all power and authority that may be or could have been exercised, with respect to the Liquidating Trust Assets, by any officer, director, shareholder or other party acting in the name of the Debtors or their estates with like effect as if duly authorized, exercised and taken by action of such officers, directors, shareholders or other party. The identity of the Liquidating Trustee has been disclosed in the Plan Supplement. Alan D. Halperin, who was selected by the members of the Creditors' Committee, was identified in the Liquidating Trust Agreement included in the Plan Supplement filed with the Bankruptcy Court. Mr. Halperin has no known connections to the Debtors or these Chapter 11 Cases. Accordingly, the selection of directors, officers, and the Liquidating Trustee is consistent with the interests of creditors, equity security holders, and public policy. As such, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

X.      Additional Plan Provisions (11 U.S.C. § 1123(b)). The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code. The failure to specifically address a provision of the Bankruptcy Code in this Order shall not diminish or impair the effectiveness of this Order.

Y.      Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)). As contemplated by section 1123(b)(1) of the Bankruptcy Code, Class 4A (General Unsecured Claims against FBI Debtors), Class 4B (General Unsecured Claims against Broyhill Debtors), Class 4C (General Unsecured Claims against Lane Debtors), Class 4D

01:15721099.3

11

(General Unsecured Claims against Thomasville Debtors), Class 4E (General Unsecured Claims against HDM Debtors), Class 4F (General Unsecured Claims against AT), Class 5A (Convenience Claims against FBI Debtors), Class 5B (Convenience Claims against Broyhill Debtors), Class 5C (Convenience Claims against Lane Debtors), Class 5D (Convenience Claims against Thomasville Debtors), Class 5E (Convenience Claims against HDM Debtors), Class 5F (Convenience Claims against AT), Class 6 (Subordinated Securities Claims), and Class 7 (Equity Interests in Debtors) are impaired by the Plan. Moreover, Class 1 (Priority Non-Tax Claims), Class 2 (Secured Tax Claims), and Class 3 (Other Secured Claims) are unimpaired by the Plan. Accordingly, the Plan satisfies the requirements of section 1123(b)(1) of the Bankruptcy Code.

       Z.     <u>Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2))</u>. In accordance with section 1123(b)(2) of the Bankruptcy Code, Sections 10.1 and 10.2 of the Plan provide that, in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, on the Effective Date, all of the Debtors' executory contracts and unexpired leases will be deemed rejected as of the Effective Date, except to the extent (a) the Debtors previously have assumed, assumed and assigned, or rejected such executory contract or unexpired lease, (b) prior to the Effective Date, the Debtors have filed a motion to assume, assume and assign, or reject an executory contract or unexpired lease on which the Bankruptcy Court has not ruled, (c) an executory contract and unexpired lease is identified in the Plan Supplement as an executory contract or unexpired lease to be assumed or assumed and assigned pursuant to the Plan, or (d) executory contracts and unexpired leases under which the counterparty has consented to the extension of the time by which the Debtors must assume or reject to a date beyond the Effective Date. Accordingly, the Plan satisfies the requirements of section 1123(b)(2) of the Bankruptcy Code.

AA.    <u>Settlement of Claims and Causes of Action (11 U.S.C. § 1123(b)(3))</u>.  Pursuant to

section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates a global

compromise and settlement (the "<u>Global Settlement</u>") between the Creditors' Committee and the

Debtors of critical inter-Debtor, Debtor-creditor, and inter-creditor issues that materially impact

creditor recoveries in these Chapter 11 Cases, including issues regarding substantive

consolidation, the validity and enforceability of Intercompany Claims, and the allocation of

Assets among the Estates.  The Global Settlement is fair, equitable, reasonable, and in the best

interests of the Debtors, their Estates, their creditors, and other parties in interest.  The

Distribution Model, including the partial substantive consolidation of the Debtors into the Debtor

Groups, is a critical component of the advantages to be realized through the Plan.  Absent the

approval of the Global Settlement, the potential costs to each of the Debtors' Estates of

untangling the Debtors' financial affairs so as to allow the pursuit of 19 separate liquidation

plans would be significant.

BB.    <u>Sale of All or Substantially All Assets (11 U.S.C. § 1123(b)(4))</u>.  In accordance

with Section 1123(b)(4) of the Bankruptcy Code, the Plan establishes a Liquidating Trust to

provide for the orderly liquidation of all of the Estates' Assets and the distribution of the

proceeds thereof to Holders of Allowed Claims.  Accordingly, the Plan is consistent with Section

1123(b)(4) of the Bankruptcy Code.

CC.    <u>Modification of Creditor Rights (11 U.S.C. § 1123(b)(5))</u>.  In accordance with

Section 1123(b)(5) of the Bankruptcy Code, Article V of the Plan modifies the rights of holders

of Claims and Equity Interests in Classes 4A through 4F, 5A through 5F, 6 and 7.  The Plan also

provides for the payment in full of Allowed Claims in Classes 1, 2, and 3, including the Allowed

Case 04-13200-CSS    Doc 2405-3    Filed 07/14/10    Page 14 of 51

Secured Tax Claims in Class 2 and the Allowed Other Secured Claims in Class 3. Accordingly, the Plan is consistent with section 1123(b)(5) of the Bankruptcy Code.

     DD.   <u>Debtors Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, including having complied with section 1125 of the Bankruptcy Code with respect to the Disclosure Statement and the Plan.

     EE.   <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors are the proponents of the Plan. The Debtors have proposed the Plan (including all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby complying with section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the record of these Chapter 11 Cases, including the Declarations and the record of the hearing to approve the Disclosure Statement, the record of the Confirmation Hearing, and other proceedings held in these Chapter 11 Cases. The Plan is based upon extensive, arm's-length negotiations between and among the Debtors, the Creditors' Committee, the Pension Benefit Guaranty Corporation ("<u>PBGC</u>"), and other parties-in-interest, and represents the culmination of months of intensive negotiations and discussions among all parties in interest. Moreover, the Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and effectuating a successful liquidation of the Debtors. The Plan accomplishes maximization of the value of the Debtors' estates and equitable distribution of the Debtors' assets by providing the means through which the Liquidating Trust will effectuate distributions to the holders of Allowed Claims. The Creditors' Committee supports the Plan. Further, the exculpation, release, and injunction provisions of the Plan have been negotiated in good faith and at arm's-length with, among other persons, representatives of the Debtors, the Creditors' Committee, PBGC and

their respective advisors, are consistent with sections 105, 362, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary and appropriate to the successful winding down of the Debtors' Estates. Accordingly, the Plan and the related documents have been filed in good faith and the Debtors have satisfied their obligations under section 1129(a)(3) of the Bankruptcy Code.

FF.     <u>Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4))</u>.  Pursuant to the interim compensation procedures previously approved by this Court and established in these Chapter 11 Cases pursuant to section 331 of the Bankruptcy Code, all payments made or to be made by the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 cases, have been approved by, or are subject to the approval of, the Court as reasonable, thus satisfying section 1129(a)(4) of the Bankruptcy Code.

GG.     <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  The Plan Supplement identifies the Liquidating Trustee and the members of the Liquidating Trust Oversight Committee. Additionally, on July 8, 2014, the Debtors and the Creditors' Committee filed a joint notice that, among other things, Meredith M. Graham would be retained as a consultant to the Liquidating Trustee post-Effective Date.  From and after the Effective Date, the Liquidating Trust will be the sole shareholder of FBI, and the Liquidating Trustee will have all power and authority that may be or could have been exercised, with respect to the Liquidating Trust Assets, by any officer, director, shareholder or other party acting in the name of the Debtors or their estates with like effect as if duly authorized, exercised and taken by action of such officers, directors, shareholders or other party.  To the extent that the appointment of the Liquidating Trustee

implicates section 1129(a)(5), the Liquidating Trustee has been selected by the Creditors' Committee. As such, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

HH.  <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. No governmental regulatory commission has jurisdiction, after confirmation of the Plan, over the rates of the Debtors. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

II.  <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. As demonstrated by the Hassel Declaration, the Vote Certification and the Disclosure Statement, with respect to each impaired class of Claims against or Equity Interests in the Debtors, each holder of a Claim or Equity Interest in such Class has accepted the Plan or will receive or retain pursuant to the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

JJ.  <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Class 1 (Priority Non-Tax Claims), Class 2 (Secured Tax Claims), and Class 3 (Other Secured Claims) are unimpaired under the Plan and are, therefore, conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Class 4A (General Unsecured Claims against FBI Debtors), Class 4B (General Unsecured Claims against Broyhill Debtors), Class 4C (General Unsecured Claims against Lane Debtors), Class 4D (General Unsecured Claims against Thomasville Debtors), Class 4E (General Unsecured Claims against HDM Debtors), Class 4F (General Unsecured Claims against AT), Class 5A (Convenience Claims against FBI Debtors), Class 5B (Convenience Claims against Broyhill Debtors), Class 5C (Convenience Claims against Lane Debtors), Class 5D (Convenience Claims against Thomasville Debtors), Class 5E

(Convenience Claims against HDM Debtors), and Class 5F (Convenience Claims against AT), which are impaired Classes of Claims eligible to vote, have affirmatively voted to accept the Plan. As such, section 1129(a)(8) is satisfied with respect to these Classes of Claims. Class 6 (Subordinated Securities Claims) and Class 7 (Equity Interests) are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, because they will not receive or retain any property on account of their claims against or interests in the Debtors. The Plan may nevertheless be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Class 6 and Class 7.

KK. <u>Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Administrative Expense Claims and Priority Tax Claims pursuant to Article IV of the Plan satisfies the requirements of sections 1129(a)(9)(A), (B), (C) and (D) of the Bankruptcy Code.

LL. <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>. Classes 4A, 4B, 4C, 4D, 4E, 4F, 5A, 5B, 5C, 5D, 5E, and 5F, each of which is impaired under the Plan and entitled to vote, voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code. Specifically, as set forth in the Vote Certification, (i) creditors holding 99.17% in number and 99.98% in dollar amount of Class 4A Claims voted to accept the Plan, (ii) creditors holding 100.00% in number and 100.00% in dollar amount of Class 4B Claims voted to accept the Plan, (iii) creditors holding 96.97% in number and 99.95% in dollar amount of Class 4C Claims voted to accept the Plan, (iv) creditors holding 98.65% in number and 99.99% in dollar amount of Class 4D Claims voted to accept the Plan, (v) creditors holding 97.96% in number and 99.96% in dollar amount of Class 4E Claims voted to accept the Plan, (vi) creditors

holding 100.00% in number and 100.00% in dollar amount of Class 4F Claims voted to accept

the Plan, (vii) creditors holding 96.74% in number and 98.58% in dollar amount of Class 5A

Claims voted to accept the Plan, (viii) creditors holding 100.00% in number and 100.00% in

dollar amount of Class 5B Claims voted to accept the Plan, (ix) creditors holding 100.00% in

number and 100.00% in dollar amount of Class 5C Claims voted to accept the Plan, (x) creditors

holding 98.80% in number and 99.93% in dollar amount of Class 5D Claims voted to accept the

Plan, (xi) creditors holding 97.70% in number and 96.95% in dollar amount of Class 5E Claims

voted to accept the Plan, and (xii) creditors holding 100.00% in number and 100.00% in dollar

amount of Class 5F Claims voted to accept the Plan.  Therefore, the requirements of section

1129(a)(10) of the Bankruptcy Code have been satisfied.

      MM.   Feasibility (11 U.S.C. § 1129(a)(11)).  The information in the Disclosure

Statement and the evidence proffered or adduced at the Confirmation Hearing and in the Hassel

Declaration: (i) is persuasive and credible; (ii) has not been controverted by other evidence; and

(iii) establishes that the Plan is feasible, there is a reasonable likelihood that the Liquidating

Trust will meet its financial obligations under the Plan in the ordinary course of business, and

confirmation of the Plan is not likely to be followed by conversion to chapter 7 or the financial

restructuring of the Liquidating Trust, thus satisfying the requirements of section 1129(a)(11) of

the Bankruptcy Code.

      NN.   Payment of Fees (11 U.S.C. § 1129(a)(12)).  As required pursuant to Section 15.8

of the Plan, all fees payable under section 1930 of title 28 of the United States Code have been or

will be paid on or before the Effective Date, thus satisfying the requirements of section

1129(a)(12) of the Bankruptcy Code.

OO.   <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. Following the termination of the Furniture Brands Retirement Plan in accordance with the PBGC Settlement and the Termination Agreement (as defined in the PBGC Settlement), the Debtors have no further obligations with respect to retiree benefits.  Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

PP.   <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>. The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

QQ.   <u>Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))</u>. The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

RR.   <u>No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>. The Debtors are moneyed, business, or commercial corporations, and/or partnerships, as the case may be, and, accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

SS.   <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>.  The Debtors have satisfied the requirements of sections 1129(b)(1) and (b)(2) of the Bankruptcy Code with respect to Class 6 (Subordinated Securities Claims) and Class 7 (Equity Interests) (the "<u>Rejecting Classes</u>").  Based on the evidence proffered or adduced at the Confirmation Hearing and in the Hassel Declaration, the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code. First, the Plan does not discriminate unfairly, because no class of Claims or Equity Interests

having similar legal rights to the Claims and Equity Interests in the Rejecting Classes is receiving different treatment under the Plan. Second, the Plan is "fair and equitable" as to the Rejecting Classes because (a) no interests junior to the Claims of Class 6 will receive or retain any property under the Plan on account of such junior interests and (b) no holder of a Claim senior to Class 7 will receive more than full value on account of its Claim. Based on the foregoing, the requirements of section 1129(b) of the Bankruptcy Code are met with respect to the Rejecting Classes, and the Plan may be confirmed notwithstanding the deemed rejection by the Rejecting Classes.

TT.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan filed in these cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

UU.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

VV.    <u>Small Business Case (11 U.S.C. § 1129(e))</u>. None of the Chapter 11 Cases are "small business case[s]," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

## Additional Findings

WW.    <u>Good-Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Court in these Chapter 11 Cases and the Vote Certification, the Debtors have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code,

and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

XX.     Satisfaction of Confirmation Requirements. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

YY.     Implementation.  All documents necessary to implement the Plan, including, without limitation, those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's-length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

ZZ.     Good Faith of the Debtors.  The Debtors, and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, partners, affiliates, and representatives (i) have acted in good faith in negotiating, formulating, and proposing the Plan and agreements, compromises, settlements, transactions and transfers contemplated thereby, and (ii) will be acting in good faith in proceeding to (a) consummate the Plan and the agreements, compromises, settlements, transactions, and transfers contemplated thereby and (b) take the actions authorized and directed or contemplated by this Order.

AAA.    Executory Contracts and Unexpired Leases.  The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assignment, and rejection of executory contracts and unexpired leases pursuant to Sections 10.1 and 10.2 of the Plan.

BBB.    Vesting of Assets.  Except as provided in the Plan, and subject to the Liquidating Trust Agreement, on the Effective Date, all property of the Debtors (other than the Remaining Real Property (as defined below) held for sale by the Debtors) shall vest in the Liquidating Trust

Case 04-12020-CSS   Doc 4056   Filed 07/24/20   Page 23 of 113

free and clear of all Claims, Liens, Liabilities, encumbrances, charges, and other interests, including, without limitation, any and all claims, liens, encumbrances and any and all right, title, and interests related thereto of governmental entities relating to any tax liabilities or similar liabilities. Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

CCC.  Injunction, Exculpation, and Releases.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation, and releases set forth in Article XIII of the Plan, because, *inter alia*, these provisions are an integral part of the Debtors' Plan and are necessary and appropriate for the Plan's implementation. Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases set forth in Article XIII of the Plan if, as has been established here based upon the record in the Chapter 11 Cases, the Graham Declaration, the Hassel Declaration, and the evidence presented at the Confirmation Hearing, such provisions (i) were integral to the agreement among the various parties in interest and are important and necessary to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estates and creditors, (iii) are fair and reasonable, and (iv) are in the best interests of the Debtors, their estates, and parties in interest.  Further, the release and exculpation provisions in the Plan do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a final order by a court of competent jurisdiction to have constituted willful misconduct, fraud, or gross negligence or the other exceptions set forth therein.  Based upon the record of these Chapter 11 Cases, the Graham Declaration, the Hassel Declaration, and the evidence proffered or adduced at the Confirmation Hearing, this

01:15721099.3

Court finds that the injunction, exculpation, and releases set forth in Article XIII of the Plan are consistent with the Bankruptcy Code and applicable law.

DDD.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpations, and injunctions set forth in Article XIII of the Plan and implemented by this Order are fair, equitable, reasonable, and in the best interests of the Debtors and the Debtors' Estates, creditors, and equity holders.  The failure to include such provisions would seriously impair the Debtors' ability to confirm a consensual Plan in these Chapter 11 Cases.  Accordingly, this Court finds that the releases, exculpations, and injunctions set forth in Article XIII of the Plan are consistent with the Bankruptcy Code and applicable law.

EEE.  Compromise and Settlement. Pursuant to Bankruptcy Rule 9019, in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan.  All Plan distributions made to creditors holding Allowed Claims in any Class are intended to be, and shall be, final.

FFF.  Findings with Respect to Substantive Consolidation.  As set forth in the Hassel Declaration, the Debtor entities within each Debtor Group disregarded separateness so significantly that their creditors generally treated each Debtor Group as one legal entity.  The Debtors generally tracked payables and receivables on a brand-level basis, not a legal entity basis. Each Debtor Group generally maintained its own separate books and records, including distinct accounting systems on a brand-level basis. The Debtors also generally held themselves out to their vendors, customers, and other third parties on brand-level basis.  For example, prior to the Petition Date, the Debtor Groups generally placed orders by brand and primarily dealt with vendors on a brand basis.  Similarly, customers placed orders with the Debtors by brand.

Invoices and receipts issued by the Debtors to vendors and customers frequently indicated only the brand and not the particular legal entity. Moreover, each Debtor Group generally made payments to third parties from a single disbursement account.

GGG. As set forth in the Hassel Declaration, it would be prohibitively costly, difficult, and time-consuming to administer the claims reconciliation with respect to each legal entity within each Debtor Group and re-allocate the proceeds from the HHG Sale. More importantly, the partial substantive consolidation along brand lines is projected to increase recoveries to holders of General Unsecured Claims (other than PBGC) when compared to the distributions under separate chapter 11 plans for each of the Debtors' 19 legal entities (assuming that the assets and liabilities could even be appropriately disentangled). This is so because the partial substantive consolidation proposed in the Plan effectively eliminates many (but not all) of PBGC's joint and several claims against each separate Debtor, thereby allowing increased distributions to all other general unsecured creditors. As part of the PBGC Settlement, PBGC has agreed to support the Plan and the partial substantive consolidation proposed in the Plan, as part of the Global Settlement. Moreover, pursuing separate chapter 11 plans for each of the 19 Debtor entities would mean abandoning the Global Settlement and the PBGC Settlement (including the $6 million in additional funds made available by PBGC for distribution to Consenting Creditors), which would result in costly litigation concerning substantive consolidation, the validity and enforceability of Intercompany Claims, the allocation of Assets among the Estates, the value attributable to the foreign non-Debtor subsidiaries, and the nature and amount of PBGC's claims, all of which would reduce recoveries to holders of Allowed General Unsecured Claims.

HHH.  Liquidating Trust.  Entry into the Liquidating Trust Agreement is in the best interests of the Debtors and the Debtors' Estates, creditors, and equity holders.  The establishment of the Liquidating Trust, the selection of Alan D. Halperin to serve as the Liquidating Trustee, the form of the proposed Liquidating Trust Agreement (as it may be modified or amended), is appropriate and in the best interests of the Debtors and the Debtors' Estates, creditors, and equity holders.  The Liquidating Trust Agreement shall, upon execution, be valid, binding and enforceable in accordance with its terms.  The holders of Allowed General Unsecured Claims under the Plan, whether or not such Claims are Allowed as of the Effective Date, are the beneficiaries of the Liquidating Trust.

III.  Exemption from Securities Law.  Section 1145 of the Bankruptcy Code exempts from registration under section 5 of the Securities Act or other applicable securities laws the offer or sale, under a chapter 11 plan of reorganization, of a security of a debtor, of any affiliate participating in a joint plan with the debtor, or of a successor to a debtor under a plan, if such securities are offered or sold in exchange for a claim against, or an equity interest in, such debtor or affiliate.  Such securities may be resold without registration under the Securities Act, unless the holder is an "underwriter" with respect to such securities, as that term is defined in section 1145(b) of the Bankruptcy Code.  To the extent the Liquidating Trust Beneficiaries' interest in the Liquidating Trust is deemed to be a security, section 1145 of the Bankruptcy Code applies to the distribution under the Plan of interests in the Liquidating Trust.  In addition, to the extent persons deemed to be "underwriters" receive interests in the Liquidating Trust pursuant to the Plan, which interests are otherwise exempt from registration pursuant to section 1145 of the Bankruptcy Code, resales of such interests in the Liquidating Trust would not be exempted by

section 1145 of the Bankruptcy Code from registration under the Securities Act or other applicable law.

JJJ.    Liquidating Trust Assets.  It is in the best interests of the Debtors and the Debtors' Estates, creditors, and equity holders that the Liquidating Trust Assets be transferred to the Liquidating Trust, as set forth in Sections 7.3(c) and 7.3(d) of the Plan.

KKK.    Liquidating Trust Is Not A Successor of the Debtors.  The Liquidating Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth in the Plan or in the Liquidating Trust Agreement.

## CONCLUSIONS OF LAW

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      Confirmation.  All requirements for confirmation of the Plan have been satisfied. Accordingly, the Plan in its entirety is CONFIRMED pursuant to section 1129 of the Bankruptcy Code.  A copy of the confirmed Plan is attached as "Exhibit A" to this Order.  The terms of the Plan and the Plan Supplement are incorporated by reference into, and are an integral part of, this Order.

2.      Objections.  All parties have had a full and fair opportunity to litigate all issues raised by the Objections, or which might have been raised, and the Objections have been fully and fairly litigated.  All Objections, responses, statements, and comments in opposition to the Plan, other than those withdrawn with prejudice in their entirety prior to the Confirmation Hearing or otherwise resolved on the record of the Confirmation Hearing and/or herein are overruled for the reasons stated on the record.

3. <u>Findings of Fact and Conclusions of Law</u>. The findings of fact and the conclusions of law stated in this Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

4. <u>Plan Supplement</u>. The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Debtors, are authorized and approved when they are finalized, executed and delivered, and are integral to, part of and are incorporated by reference into the Plan. Without further order or authorization of this Court, the documents included in the Plan Supplement may be amended and supplemented, prior to execution, so long as such amendment or supplement does not materially and adversely change the treatment of holders of Claims. Execution versions of the documents comprising the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.

5. <u>Solicitation and Notice</u>. Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. The solicitation of votes on the Plan and the Solicitation Materials complied with the solicitation procedures in the

Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. Notice of the Plan Supplement, and all related documents, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

6.      _Omission of Reference to Particular Plan Provisions_.  The failure to specifically describe or include any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

7.      _Plan Classification Controlling_.  The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classification set forth on the Ballots tendered or returned by the Debtors' creditors in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes; and (c) shall not be binding on the Debtors, the Liquidating Trust, creditors, or equity holders for purposes other than voting on the Plan; _provided_, _however,_ a Convenience Class Election on a properly executed Ballot made by a holder of a General Unsecured Claim shall be conclusive, final, and binding on the holder of such Claim.

8.      _Binding Effect_.  Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan, the Plan Supplement, and this Order shall bind (a)

01:15721099.3

28

any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns (whether or not the Claim or Equity Interests are Impaired under the Plan, whether or not such holder has voted to accept the Plan, and whether or not such holder is entitled to a Distribution under the Plan), (b) all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, (c) each Person acquiring property under the Plan or this Order, and (d) any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

9.      <u>Corporate Existence and Dissolution of Debtors</u>.  Immediately after the Effective Date, the Liquidating Trustee shall be authorized to take, in his or her sole and absolute discretion, all actions reasonably necessary to dissolve one or more of the Debtors under applicable laws, including under the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation.  Upon the final Distributions, any Debtors that have not been previously dissolved shall be deemed dissolved for all purposes without the necessity for other or further actions to be taken by or on behalf of the Debtors, and the Liquidating Trustee shall be authorized to file any certificate of cancellation or other documents as may be necessary or desirable to terminate the legal existence of FBI.

10.      <u>Cancellation of Instruments and Stock</u>.  On the Effective Date, all instruments evidencing or creating any indebtedness or obligation of the Debtors, except such instruments that are authorized or issued under the Plan, shall be canceled and extinguished.  Additionally, as of the Effective Date, all Equity Interests in all of the Debtors, and any and all warrants, options, rights, or interests with respect to such Equity Interests that have been issued, could be issued, or

that have been authorized to be issued but that have not been issued, shall be deemed cancelled and extinguished without any further action of any party; provided, however, that FBI shall issue one (1) share of common stock to the Liquidating Trust. The Liquidating Trustee shall have all power and authority that may be or could have been exercised, with respect to the Liquidating Trust Assets, by any officer, director, shareholder or other party acting in the name of the Debtors or their estates with like effect as if duly authorized, exercised and taken by action of such officers, directors, shareholders or other party. The holders of, or parties to, the cancelled notes, membership interests, share certificates, and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates, and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan.

11.   Vesting of Liquidating Trust Assets. Any and all of the Estates' Assets shall remain assets of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and on the Effective Date shall, subject to the Liquidating Trust Agreement, be transferred to and vest in the Liquidating Trust free and clear of all Claims, Liens, Liabilities, encumbrances, charges, and other interests, including, without limitation, any and all claims, liens, encumbrances and any and all right, title, and interests related thereto of governmental entities relating to any tax liabilities or similar liabilities. Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the Liquidating Trust and the Liquidating Trustee shall have the right to pursue or not to pursue, or, subject to the terms of the Plan and the Liquidating Trust Agreement, compromise or settle any Liquidating Trust Assets. From and after the Effective Date, the Liquidating Trust and the Liquidating Trustee may commence, litigate, and settle any Causes of Action or Claims relating to the Liquidating Trust Assets or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Liquidating Trust and Liquidating Trustee on or after

the Effective Date, except as otherwise expressly provided in the Plan and the Liquidating Trust Agreement. The Liquidating Trust shall be entitled to enforce all defenses and counterclaims to all Claims asserted against the Debtors and their Estates, including setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code.

12. <u>Partial Substantive Consolidation</u>. Entry of this Order shall constitute approval, pursuant to sections 105(a) and 1123(a)(5) of the Bankruptcy Code, effective as of the Effective Date, of (a) the substantive consolidation of the Estates of the FBI Debtors, (b) the substantive consolidation of the Estates of the Broyhill Debtors, (c) the substantive consolidation of the Estate of the Lane Debtors, (d) the substantive consolidation of the Estates of the Thomasville Debtors, (e) the substantive consolidation of the Estates of the HDM Debtors, in each case for for the purposes of voting and creditor distributions under the Plan. The partial substantive consolidation called for in the Plan shall not (other than for the purposes of voting and creditor distributions under the Plan) affect (a) the legal and organizational structure of the Debtors, (b) executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed or rejected, (c) any agreements entered into by the Liquidating Trustee on or after the Effective Date, and (d) the Debtors' or the Liquidating Trustee's ability to subordinate or otherwise challenge Claims on an entity-by-entity basis. Notwithstanding the partial substantive consolidation called for in the Plan, each and every Debtor shall remain responsible for the payment of U.S. Trustee Fees until its particular case is closed, dismissed, or converted.

(a) *Consolidation of FBI Debtors.* The Assets and Liabilities of each of the FBI Debtors shall be the Assets and Liabilities of a single, consolidated entity. Each and every Claim filed or to be filed in the Chapter 11 Cases against any of the FBI Debtors shall be considered

filed against the consolidated FBI Debtors on and after the Effective Date. Any joint and several Liability of two or more of the FBI Debtors, and all Claims against such entities on account of such joint and several Liability, shall be considered a single Claim and single Liability against the consolidated FBI Debtors. Any guarantee by an FBI Debtor of the Liabilities of any other FBI Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan so that any Claim against any FBI Debtor and any guaranty thereof executed by any other FBI Debtor shall be deemed to be one obligation of the consolidated FBI Debtors. Intercompany Claims between the FBI Debtors shall be waived and eliminated.

(b)     *Consolidation of Broyhill Debtors*. The Assets and Liabilities of each of the Broyhill Debtors shall be the Assets and Liabilities of a single, consolidated entity. Each and every Claim filed or to be filed in the Chapter 11 Cases against any of the Broyhill Debtors shall be considered filed against the consolidated Broyhill Debtors on and after the Effective Date. Any joint and several Liability of two or more of the Broyhill Debtors, and all Claims against such entities on account of such joint and several Liability, shall be considered a single Claim and single Liability against the consolidated Broyhill Debtors. Any guarantee by a Broyhill Debtor of the Liabilities of any other Broyhill Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan so that any Claim against any Broyhill Debtor and any guaranty thereof executed by any other Broyhill Debtor shall be deemed to be one obligation of the consolidated Broyhill Debtors. Intercompany Claims between the Broyhill Debtors shall be waived and eliminated.

(c)     *Consolidation of Lane Debtors*. The Assets and Liabilities of each of the Lane Debtors shall be the Assets and Liabilities of a single, consolidated entity. Each and every Claim filed or to be filed in the Chapter 11 Cases against any of the Lane Debtors shall be considered

01:15721099.3

filed against the consolidated Lane Debtors on and after the Effective Date.  Any joint and several Liability of two or more of the Lane Debtors, and all Claims against such entities on account of such joint and several Liability, shall be considered a single Claim and single Liability against the consolidated Lane Debtors.  Any guarantee by a Lane Debtor of the Liabilities of any other Lane Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan so that any Claim against any Lane Debtor and any guaranty thereof executed by any other Lane Debtor shall be deemed to be one obligation of the consolidated Lane Debtors. Intercompany Claims between the Lane Debtors shall be waived and eliminated.

    *(d)*      *Consolidation of Thomasville Debtors*. The Assets and Liabilities of each of the Thomasville Debtors shall be the Assets and Liabilities of a single, consolidated entity.  Each and every Claim filed or to be filed in the Chapter 11 Cases against any of the Thomasville Debtors shall be considered filed against the consolidated Thomasville Debtors on and after the Effective Date.  Any joint and several Liability of two or more of the Thomasville Debtors, and all Claims against such entities on account of such joint and several Liability, shall be considered a single Claim and single Liability against the consolidated Thomasville Debtors.  Any guarantee by a Thomasville Debtor of the Liabilities of any other Thomasville Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan so that any Claim against any Thomasville Debtor and any guaranty thereof executed by any other Thomasville Debtor shall be deemed to be one obligation of the consolidated Thomasville Debtors.  Intercompany Claims between the Thomasville Debtors shall be waived and eliminated.

    *(e)*      *Consolidation of HDM Debtors*.  The Assets and Liabilities of each of the HDM Debtors shall be the Assets and Liabilities of a single, consolidated entity.  Each and every Claim filed or to be filed in the Chapter 11 Cases against any of the HDM Debtors shall be considered

filed against the consolidated HDM Debtors on and after the Effective Date. Any joint and several Liability of two or more of the HDM Debtors, and all Claims against such entities on account of such joint and several Liability, shall be considered a single Claim and single Liability against the consolidated HDM Debtors. Any guarantee by an HDM Debtor of the Liabilities of any other HDM Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan so that any Claim against any HDM Debtor and any guaranty thereof executed by any other HDM Debtor shall be deemed to be one obligation of the consolidated HDM Debtors. Intercompany Claims between the HDM Debtors shall be waived and eliminated.

13.   _Liquidating Trustee_.  Alan D. Halperin is appointed as the Liquidating Trustee. Absent authorization of the Court pursuant to a Final Order, no judicial, administrative, arbitral, or other action or proceeding shall be commenced in any forum other than this Court against the Liquidating Trustee, in his official capacity, with respect to his status, duties, powers, acts, or omissions as Liquidating Trustee.

14.   _Distributions Under the Plan_.  All distributions under the Plan shall be made in accordance with Article VIII of the Plan and such methods of distribution are approved.

15.   _Disputed Claims_.  The provisions of Article IX of the Plan, including, without limitation, the provisions governing procedures for resolving Disputed Claims, are found to be fair and reasonable and are approved.

16.   _Treatment Is in Full Satisfaction_.  All distributions under the Plan shall be made in accordance with the Plan. The treatment set forth in the Plan is in full satisfaction of the legal, contractual and equitable rights (including any liens) that each entity holding a Claim or Equity Interest may have in or against the Debtors, the Estates, or their respective property.  This

01:15721099.3

34

treatment supersedes and replaces any agreements or rights those entities may have in or against the Debtors, the Estates, or their respective property.

17.     Supplemental Administrative Expense Bar Date.  Subject to the exceptions set forth in Section 4.1(b) of the Plan, Holders of Administrative Expense Claims (other than Professional Fee Claims) arising during the period from March 1, 2014 through the Effective Date must file requests for payment of Administrative Expense Claims so as to be **actually received on or before 4:00 p.m. (prevailing Eastern Time) on the day that is thirty (30) calendar days after the Effective Date** (the "Supplemental Administrative Expense Claims Bar Date") by the Claims Agent at the following address:

> If by first-class mail:
>
> > FBI Wind Down, Inc. Claims Processing Center
> > c/o Epiq Bankruptcy Solutions, LLC
> > FDR Station, P.O. Box 5075
> > New York, New York 10150-5075
>
> If by hand delivery or overnight:
>
> > FBI Wind Down, Inc. Claims Processing Center
> > c/o Epiq Bankruptcy Solutions, LLC
> > 757 Third Avenue, 3rd Floor
> > New York, New York 10017

18.     All such requests for payment must: (i) be signed by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant; (ii) be written in the English language; (iii) denominate the claim in lawful currency of the United States as of the Supplemental Administrative Expense Bar Date; (iv) indicate the particular Debtor against which the claim is asserted; and (v) include supporting documentation (or, if such documentation is voluminous, include a summary of such documentation) or an explanation as to why such

01:15721099.3

35

documentation is not available. Nothing in this Order shall extend or otherwise modify any deadline or requirement for filing claims set forth in previous Orders of this Court.

19.     Any Person that is required to file a request for payment of an Administrative Expense Claim (other than Professional Fee Claims) under the Plan and that fails to do so by the Supplemental Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claim, and such Administrative Expense Claim shall not be enforceable against the Liquidating Trust, the Liquidating Trustee, the Debtors, the Estates, and their respective properties, and the Liquidating Trust, the Liquidating Trustee, Debtors, the Estates, and their respective properties shall be forever discharged from any and all Liability with respect to such Administrative Expense Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Administrative Expense Claims shall, as of the Effective Date, be subject to the permanent injunction pursuant to Section 13.5 of the Plan and this Order.

20.     <u>Adequate Protection Claims</u>. The Adequate Protection Claims of the holders of Claims under the Prepetition Term Loan Agreement and the Prepetition Revolver Credit Agreement have been satisfied in full and no Distributions shall be made with respect to any such Adequate Protection Claims under the Plan.

21.     <u>Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>. On the Effective Date, all of the Debtors' executory contracts and unexpired leases will be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except to the extent (a) the Debtors previously have assumed, assumed and assigned, or rejected such executory contract or unexpired lease, (b) prior to the Effective Date, the Debtors have filed a

motion to assume, assume and assign, or reject an executory contract or unexpired lease on which the Bankruptcy Court has not ruled, (c) an executory contract and unexpired lease is identified in the Plan Supplement as an executory contract or unexpired lease to be assumed or assumed and assigned pursuant to the Plan, or (d) executory contracts and unexpired leases under which the counterparty has consented to the extension of the time by which the Debtors must assume or reject to a date beyond the Effective Date.  Entry of this Order shall constitute approval of all rejections of executory contracts and unexpired leases pursuant to Section 10.1 of the Plan and sections 365(a) and 1123 of the Bankruptcy Code.  Entry of the this Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases pursuant to section 10.1 of the Plan.   The assumption of the contracts and leases identified in Item 9 of the Plan Supplement (the "Assumed Contracts") is hereby approved, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  The cure amounts with respect to the Assumed Contracts specified in Item 9 of the Plan Supplement are hereby approved.

22.    Bar Date for Rejection Damages.  If the rejection by the Debtors of an executory contract or an unexpired lease pursuant to Section 10.1 of the Plan results in damages to the other party or parties to such executory contract or unexpired lease, a Claim for such damages arising from such rejection shall not be enforceable against the Debtors or their Estates or agents, successors, or assigns, unless a proof of Claim is filed with the Claims Agent **so as to actually be received on or before** the Rejection Bar Date, i.e., the date that is 30 calendar days after the Effective Date.  Any Person that is required to file a proof of Claim arising from the rejection of an executory contract or unexpired lease under the Plan and that fails to timely do so shall be

01:15721099.3

forever barred, estopped, and enjoined from asserting such Claim, and such Claim shall not be enforceable against the Liquidating Trust, the Liquidating Trustee, the Debtors, the Estates, and their respective properties, and the Liquidating Trust, the Liquidating Trustee, Debtors, the Estates, and their respective properties shall be forever discharged from any and all Liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction pursuant to Section 13.5 of the Plan and this Order.

23. **Exculpation.** **None of the Debtors, the Debtors-in-Possession, and the current or former directors, officers, employees, Affiliates, agents, accountants, financial advisors, investment bankers, restructuring advisors, attorneys, representatives, and other professionals of or to the Debtors and the Debtors-in-Possession who served or were employed in such capacities after the Petition Date, and each of their respective agents and representatives, the Released Parties, members of the Creditors' Committee and the professionals retained by the Creditors' Committee shall have or incur any Liability for any Claim, Cause of Action, or other assertion of Liability for any act taken or omitted to be taken in connection with or arising out of the Chapter 11 Cases, the sale of the Debtors' assets, the formulation, dissemination, implementation, approval, confirmation, consummation, or administration of the Plan, property to be distributed under the Plan, or any other act or omission in connection with or arising out of the Chapter 11 Cases, the Plan, the Disclosure Statement, or any contract, instrument, document or other agreement related thereto; provided, however, that the foregoing shall not affect the Liability of any Person resulting from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, fraud, or gross**

negligence.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, discharges, and any other applicable law or rules protecting such Persons from liability.

24.  <u>Liquidating Trustee Exculpation and Indemnification</u>.  The Liquidating Trustee shall not have or incur any liability for any act or omission taken or omitted to be taken (a) in his capacity as Liquidating Trustee or (b) to otherwise implement or effectuate the terms and provisions of the Plan, or (c) in the exercise of the power and authority that may be or could have been exercised by any officer, director, shareholder or other party acting in the name of the Debtors or their estates; <u>provided</u>, <u>however</u>, that the foregoing shall not affect the liability of the Liquidating Trustee resulting from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, fraud, or gross negligence.  The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee, from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) which the Liquidating Trustee may incur or become subject in connection with any action, suit, proceeding, or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the discharge of his duties thereunder, and the Liquidating Trustee shall be entitled to payment or reimbursement from the assets of the Liquidating Trust for any and all such liabilities, losses, damages, claims, costs and expenses; <u>provided</u>, <u>however</u>, that no such indemnification, payment or reimbursement will be made to the Liquidating Trustee for

actions or omissions as a result of willful misconduct, gross negligence, or fraud.  This
exculpation and indemnification shall be in addition to, and not in limitation of, all other
releases, indemnities, discharges, and any other applicable law or rules protecting the
Liquidating Trustee from liability.

25.    **Releases by Debtors, the Estates, the Liquidating Trust, and the Liquidating
Trustee**.  Effective as of the Confirmation Date, but subject to the occurrence of the
Effective Date, and in consideration of the services of the Released Parties, (a) the Debtors,
(b) their respective Estates, (c) the Liquidating Trust, and (d) the Liquidating Trustee shall
release, waive, and discharge unconditionally and forever each of the Released Parties from
any and all Claims, Causes of Action, and Liabilities whatsoever (including those arising
under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing
or hereinafter arising in law, equity, or otherwise, based in whole or in part on any act,
omission, transaction, event or other occurrence: (i) taking place before the Petition Date in
connection with the Debtors; and (ii) in connection with or arising out of the Debtors'
Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation thereof, the
administration thereof or the property to be distributed thereunder; provided, that the
foregoing shall not operate as a waiver of or release from any Causes of Action resulting
from the willful misconduct, fraud, or gross negligence of any Released Party.  In addition,
effective as of the Confirmation Date, but subject to the occurrence of the Effective Date,
and in consideration of the services of the Liquidating Trust and the Liquidating Trustee,
the Debtors and the Estates shall release, waive, and discharge unconditionally and forever
each of the Liquidating Trust and the Liquidating Trustee from any and all Claims, Causes
of Action, and Liabilities whatsoever (including those arising under the Bankruptcy Code),

01:15721099.3

whether known or unknown, foreseen or unforeseen, existing or hereinafter arising in law, equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence taking place before the Effective Date in connection with or arising out of the Debtors' Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof or the property to be distributed thereunder; provided, that the foregoing shall not operate as a waiver of or release from any Causes of Action resulting from the willful misconduct, fraud, or gross negligence of the Liquidating Trust or the Liquidating Trustee.

26.    **Injunction.** Except as otherwise provided in the Plan, all Persons that have held, hold, or may hold Claims against or Equity Interests in the Debtors or their Estates that arose prior to the Effective Date are permanently enjoined, solely with respect to any such Claims or Equity Interests, from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trustee; (b) enforcing, attaching, collecting, or recovering, by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trustee; (c) creating, perfecting, or enforcing, in any manner, directly or indirectly, any Lien or encumbrance against the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trustee; (d) except to the extent permitted by sections 362(b), 553, 559, 560, or 561 of the Bankruptcy Code, asserting any right of setoff, subrogation, or recoupment against the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trustee; (e) pursuing any Claim or Cause of Action released pursuant to the Plan; or (f) taking any actions which interfere with the implementation or

consummation of the Plan. **The rights afforded in the Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtors or any of their respective assets, properties, or Estates. Nothing in this paragraph or Section 13.5 of the Plan shall preclude a party from seeking production of documents through a third party subpoena with respect to documents in the actual possession or custody of the Debtors, the Liquidating Trust, the Liquidating Trustee, or their agents as non-parties to any litigation.**

27.    **Terms of Stays and Injunctions.** **The automatic stay arising under section 362(a) of the Bankruptcy Code and the injunctions set forth in Section 13.5 of the Plan shall permanently remain in full force and effect.**

28.    <u>Retention of Causes of Action/Reservation of Rights</u>. Except with respect to the exculpation in Section 13.1 of the Plan and the release in Section 13.2 of the Plan, nothing contained in the Plan or this Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtors or the Liquidating Trust may have or which the Liquidating Trust may choose to assert on behalf of the Debtors' estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, their officers, directors, managers or representatives and (ii) the turnover of any property of the Debtors' estates. Except as otherwise explicitly provided in the Plan, nothing shall affect either the Debtors' or the Liquidating Trustee's rights and defenses, both legal and

01:15721099.3

equitable, with respect to any Claims or Equity Interests, including all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

29.     <u>Plan Supplement</u>.  The documents included in the Plan Supplement, including without limitation the Amended and Restated Certificate of Incorporation of FBI Wind Down, Inc. and the Amendment to Bylaws of FBI Wind Down, Inc., substantially in the forms included in the Plan Supplement, are sufficient to comply with applicable requirements of the laws, rules, and regulations of any state or other governmental authority, and all such state and other governmental authorities are directed to accept such documents for filing and implementation.

30.     <u>PBGC Settlement</u>.  Upon the occurrence of the Effective Date, all provisions of the PBGC Settlement that have not yet gone effective shall become effective and the Liquidating Trustee shall administer the PBGC Settlement and shall make any and all payments required pursuant to the terms thereof.

31.     <u>Effectuating Documents; Further Transactions</u>.  The appropriate officer and/or director of the Debtors or the Liquidating Trustee, as applicable, shall be, and hereby are, authorized to execute, deliver, file, and record such contracts, instruments, releases, indentures, certificates, and other agreements or documents, and take such other actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

32.     <u>Conditions to Effective Date</u>.  The Plan shall not become effective unless and until the conditions set forth in Section 11.1 of the Plan have been satisfied or waived pursuant to Section 11.2 of the Plan.

33.     <u>Retention of Jurisdiction</u>.  Pursuant to Article XIV of the Plan, and except as otherwise provided in this Order, this Court shall retain and have exclusive jurisdiction of all

01:15721099.3

matters in connection with, arising out of or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code.

34.  Modifications.  Pursuant to Section 15.5 of the Plan, the Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation; provided, that the Plan, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications.  A holder of a Claim that has accepted the Plan prior to any alteration, amendment, or modification will be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the holders of the Claims.  Prior to the Effective Date, the Debtors, after consultation with the Creditors' Committee, may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not materially change the treatment of holders of Claims or Equity Interests.

35.  Payment of Statutory Fees.  On or before the Effective Date, all fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid in Cash. Following the Effective Date, all such fees shall be paid by the Liquidating Trustee from the Liquidating Trust Assets until the earlier of the conversion or dismissal of the applicable Chapter 11 Case under section 1112 of the Bankruptcy Code, or the closing of the applicable Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.  For the avoidance of doubt, the U.S. Trustee Fees shall be deemed part of the Liquidating Trust Expenses.

01:15721099.3

44

36.     Exemption from Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the issuance of any stock, any merger agreements, or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

37.     Dissolution of the Creditors' Committee. On the Effective Date, except as provided in Section 15.9 of the Plan, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to, arising from or in connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's attorneys, accountants, and other agents, if any, shall terminate, except for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith, or any appeal of this Order.

38.     Securities Laws Exemption. To the extent the Liquidating Trust Beneficiaries' interest in the Liquidating Trust is deemed to be a security, the distribution under the Plan of interests in the Liquidating Trust, shall be exempt from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code, as amended.

39.     Professional Fee Claims. Pursuant to Section 4.3 of the Plan, all Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under section 330, 331, 503(b)(2),

01:15721099.3

503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file, on or before the date that is sixty (60) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order relating to or allowing any such claim. The Liquidating Trustee is authorized and directed to pay Allowed Professional Fee Claims and is authorized to pay reasonable compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval in accordance with the Liquidating Trust Agreement.

40. **Notice of Effective Date.** As soon as practicable after the occurrence of the Effective Date, the Debtors shall file and serve, pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), notice of entry of this Order and the occurrence of the Effective Date in substantially the form included as Item 10 to the Plan Supplement (the "Notice of Effective Date") on all creditors and interest holders, the United States Trustee for the District of Delaware, the attorneys for the Creditors' Committee, and other parties in interest, by causing the Notice of Effective Date to be delivered to such parties by first-Class mail, postage prepaid. The Notice of Effective Date shall also be posted on the website of the Debtors' Court-appointed voting and tabulation agent, Epiq at http://dm.epiq11.com/FBN. Such notice is adequate under the particular circumstances and no other or further notice is necessary. The form of Notice of Effective Date substantially in the form included as Item 10 to the Plan Supplement is approved.

41. **Confirmation Bonus.** The Debtors and the Liquidating Trust, as applicable, are authorized and directed to pay Ms. Graham a one-time confirmation bonus equal to 50% of her base compensation as set forth in the *Order Pursuant to Sections 105(a), 363(b) and 503(c) of*

*the Bankruptcy Code for Order Approving Engagement Agreement with Meredith M. Graham Nunc Pro Tunc to November 25, 2013*, dated December 12, 2013 [Docket No. 955].

42.   <u>HHG Reserve</u>.  In accordance with the terms of the Plan, the Liquidating Trustee shall establish all appropriate reserves, including a reserve for the disputed adjusted purchase price under the Asset Purchase Agreement totaling not less than $7.9 million.  The Liquidating Trustee shall maintain all such reserves consistent with the terms of the Plan, provided, that, the existence and amount of any such reserve shall in no way be deemed to allow, limit, or fix the amount of a claim.

43.   <u>Insurance</u>.  Notwithstanding any term or provision in the Plan or this Order to the contrary, nothing in the Plan or this Order will modify (a) AIG's (as defined below) obligations or rights in connection with the AIG Program (as defined below) or (b) ACE's (as defined below) obligations or rights in connection with the ACE Program (as defined below).  AIG's and ACE's rights to setoff, recoupment, subrogation, or arbitration, if any, and the Debtors' or Liquidating Trust's rights to object thereto, will be preserved and will be unaffected by the Plan and this Order.  The "<u>AIG Program</u>" is defined as any insurance policies issued to any of the Debtors, or their affiliates, or their predecessors by any subsidiary, affiliate or predecessor of AIG Property Casualty, Inc. (collectively, "<u>AIG</u>"), and any addenda, schedules, endorsements, payment agreements, or any other agreements related to the policies.  The "<u>ACE Program</u>" is defined as any insurance policies issued to any of the Debtors, or their affiliates, or their predecessors by ACE American Insurance Company or any of its subsidiaries, affiliates or predecessors (collectively, "<u>ACE</u>"), and any addenda, schedules, endorsements, payment agreements, or any other agreements related to the policies.  Section 9.9 of the Plan shall not apply to AIG and ACE.

01:15721099.3

44.    <u>Remaining Real Property</u>.  The real property listed on Schedule 1.4 attached

hereto and to the Liquidating Trust Agreement (the "<u>Remaining Real Property</u>") shall not be

transferred to the Liquidating Trust on the Effective Date and each parcel of Remaining Real

Property shall be deemed to remain an asset of the respective Debtor's Estate until such time as it

is disposed of by the respective Debtor or the Liquidating Trustee determines, in his sole and

absolute discretion, that it is appropriate to transfer such Remaining Real Property into the

Liquidating Trust.  Notwithstanding the foregoing, if any Remaining Real Property is not

disposed of on or before January 31, 2015, the Liquidating Trustee shall, within 5 business days,

either transfer such Remaining Real Property into the Liquidating Trust or file a motion to

abandon such Remaining Real Property; <u>provided</u>, <u>however</u>, that the Liquidating Trustee and the

Environmental Protection Agency may stipulate to extend such time by which any Remaining

Real Property may remain in the respective Debtor's Estate.   Any proceeds generated from the

disposition of the Remaining Real Property shall be contributed to the Liquidating Trust in

accordance with the Distribution Model Methodology.  The Liquidating Trust shall be

responsible to fund the reasonable ordinary operating expenses of the Remaining Real Property

in accordance with the Distribution Model.  With respect to any alleged environmental liabilities

of any Debtor as a post Effective Date owner or operator of the Remaining Property, the status

quo of the Debtor's liability to any Governmental Unit as a current owner or operator (pre-

Effective Date) shall be fully preserved and all parties in interest shall reserve all their respective

rights and defenses relating to environmental liabilities with respect to the Remaining Property

or potential abandonment of the Remaining Property; <u>provided</u>, <u>however</u>, that any environmental

liability of the Liquidating Trust for the Remaining Property shall be satisfied solely from the

assets of the Liquidating Trust for the liable Debtor under the Distribution Model; and <u>provided</u>

further, however, that nothing herein shall be construed to permit any Governmental Unit to enforce any liability against the Liquidating Trust for a claim (as defined in section 101(5) of the Bankruptcy Code) except as otherwise permitted by the Plan.

45.     Internal Revenue Service.  Notwithstanding any provision to the contrary in the Plan, this Order, and any documents implementing the Plan (collectively, the "Plan Documents"), nothing shall: (1) affect the ability of the Internal Revenue Service ("IRS") to pursue any non-Debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors or the Debtors' Estates; (2) preclude the ability of the IRS to amend its claims in accordance with applicable bankruptcy law without further Court order; or (3) affect any of the IRS's rights to  setoff and recoupment that are otherwise provided under applicable bankruptcy and non-bankruptcy law.  In addition, Section 8.11 of the Plan shall not apply to the IRS.  To the extent the IRS is the holder of Priority Tax Claims under the Plan (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code) and such Claims are not paid in full in cash on the Effective Date, such Claims shall accrue interest commencing on the Effective Date at the rate and method set forth under applicable law.  Any IRS Administrative Expense Claims allowed pursuant to the Plan or section 503 of the Bankruptcy Code shall accrue interest and penalties, if any, as provided by applicable law until paid in full.  The Bankruptcy Court may retain jurisdiction, but not exclusive jurisdiction, over IRS claims and issues arising therefrom to the extent allowed by applicable law.  Moreover, nothing in the Plan Documents shall: (a) effect a release, discharge or otherwise preclude any claim whatsoever against any Debtors or the Liquidating Trust by or on behalf of the IRS relating to any liability arising out of any unfiled pre-petition or post-petition tax return or any pending audit or audit which may be performed with respect to any unfiled pre-

petition or post-petition tax return; or (b) enjoin the IRS from amending any claim against any Debtors or Liquidating Trust with respect to any tax liability arising as a result of the filing of an unfiled pre-petition or post-petition return or a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax return.

46.   <u>Texas Counties</u>.  To the extent that Dallas County (Texas), Fort Bend County (Texas), Harris County (Texas), and/or Tarrant County (Texas), hold Allowed Secured Tax Claims that are secured by property the value of which, after any recovery under section 506(c) of the Bankruptcy Code, is greater than the amount of such Claims, there shall be allowed to the holder of such Claims, interest on such Claims.

47.   <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

48.   <u>Reversal</u>. If any of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtors.  Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order, the Plan, all documents relating to the Plan and any amendments or modifications to any of the foregoing.

49.   <u>Conflicts Between Order and Plan</u>.  The provisions of the Plan, the Liquidating Trust Agreement, and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; <u>provided, however</u>, that if there is determined to be any

01:15721099.3

50

inconsistency between any Plan provision and any provision of this Order that cannot be so

reconciled, then solely to the extent of such inconsistency, the provisions of this Order shall

govern and any such provision of this Order shall be deemed a modification of the Plan and shall

control and take precedence; provided further, however, that if there is determined to be any

inconsistency between any provision of the Liquidating Trust Agreement and any provision of

this Order that cannot be so reconciled, then solely to the extent of such inconsistency, the

provisions of this Order shall govern and any such provision of this Order shall be deemed a

modification of the Liquidating Trust Agreement and shall control and take precedence.  The

provisions of this Order are integrated with each other and are non-severable and mutually

dependent.

50.   Closing of Chapter 11.  Upon or as soon as practicable after the Effective Date,

the Liquidating Trustee shall file and submit separate orders closing each of the Debtors' Chapter

11 Cases, other than Case No. 13-12329, under certification of counsel.

51.   Final Order; Waiver of Stay.  This Order is a final order and the period in which

an appeal must be filed shall commence upon the entry hereof.  Any stay of this Order provided

by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)) is hereby waived, and this Order

shall be effective and enforceable immediately upon its entry by the Court.


Dated: Wilmington, Delaware
       July 14, 2014


                                    _____
                                    CHRISTOPHER S. SONTCHI
                                    UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

**Joint Plan of Liquidation**

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------x
: 
*In re:*                  :    **Chapter 11**
: 
**FBI WIND DOWN, INC. (f/k/a Furniture**   :    **Case No. 13-12329 (CSS)**
**Brands International, Inc.),** *et al.,*       :
:    **Jointly Administered**
        **Debtors.**[1]             :
: 
-------------------------------------------------------x

## SECOND AMENDED JOINT PLAN OF LIQUIDATION OF FBI WIND DOWN, INC. AND ITS SUBSIDIARIES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**PAUL HASTINGS LLP**
Luc A. Despins
Leslie A. Plaskon
James T. Grogan
75 East 55th Street, First Floor
New York, New York 10022

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
M. Blake Cleary (No. 3614)
Jaime Luton Chapman (No. 4936)
Andrew L. Magaziner (No. 5426)
Rodney Square
1000 North King Street
Wilmington, Delaware 19899-0391

*Counsel to the Debtors and Debtors in Possession*

Dated: July 9, 2014

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are: FBI Wind Down, Inc. (7683); AT Wind Down, Inc. (7587); BFI Wind Down, Inc. (3217); BHF Wind Down, Inc. (8844); BR Wind Down, Inc. (8843); BT Wind Down, Inc. (1721); FBH Wind Down, Inc (2837); FBO Wind Down, Inc. (4908); FBRC Wind Down, Inc. (1288); HFI Wind Down, Inc. (7484); HR Wind Down, Inc. (6125); HT Wind Down, Inc. (4378); LFI Wind Down, Inc. (5064); LHFR Wind Down, Inc. (9085); LV Wind Down, Inc. (8434); MSFI Wind Down, Inc. (7486); TFI Wind Down, Inc. (6574); THF Wind Down, Inc. (3139); and TR Wind Down, Inc. (6174). The Debtors' corporate headquarters is located at 1 N. Brentwood Blvd., St. Louis, Missouri 63105.

01:15708708.1

# TABLE OF CONTENTS

PAGE

Article I. DEFINED TERMS ...........................................................................1

Article II. INTERPRETATION OF PLAN.....................................................13

    2.1    Application of Definitions; Rules of Construction; Computation of Time.................................................................................13

    2.2    Relief Sought by Filing the Plan...............................................14

Article III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS .......14

    3.1    Classification ............................................................................14

Article IV. PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND OTHER UNCLASSIFIED CLAIMS.......................15

    4.1    Administrative Expense Claims ................................................15
    4.2    Adequate Protection Claims......................................................17
    4.3    Professional Fee Claims ............................................................17
    4.4    Priority Tax Claims...................................................................17

Article V. TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS.........18

    5.1    Class 1: Priority Non-Tax Claims..............................................18
    5.2    Class 2: Secured Tax Claims.....................................................18
    5.3    Class 3: Other Secured Claims..................................................19
    5.4    Class 4A: General Unsecured Claims Against the FBI Debtors ...........19
    5.5    Class 4B: General Unsecured Claims Against the Broyhill Debtors ...................................................................................19
    5.6    Class 4C: General Unsecured Claims Against the Lane Debtors .........20
    5.7    Class 4D: General Unsecured Claims Against the Thomasville Debtors ...................................................................................20
    5.8    Class 4E: General Unsecured Claims Against the HDM Debtors ........20
    5.9    Class 4F: General Unsecured Claims Against AT ................................20
    5.10   Class 5A: Convenience Claims Against FBI Debtors...........................21
    5.11   Class 5B: Convenience Claims Against Broyhill Debtors ....................21
    5.12   Class 5C: Convenience Claims Against Lane Debtors..........................21
    5.13   Class 5D: Convenience Claims Against Thomasville Debtors ..............21
    5.14   Class 5E: Convenience Claims Against HDM Debtors.........................22
    5.15   Class 5F: Convenience Claims Against AT.........................................22
    5.16   Class 6: Subordinated Securities Claims.............................................22
    5.17   Class 7: Equity Interests in Debtors ...................................................22
    5.18   Reservation of Rights Regarding Claims and Equity Interests ............23

**Article VI. ACCEPTANCE OR REJECTION OF THE PLAN** ...........................................23

    6.1    **Voting of Claims** .........................................................................................23
    6.2    **Elimination of Vacant Classes** ..............................................................23
    6.3    **Nonconsensual Confirmation** ................................................................24
    6.4    **Revocation of the Plan** ...........................................................................24

**Article VII. MEANS OF IMPLEMENTATION OF THE PLAN** ................................24

    7.1    **Global Settlement** .....................................................................................24
    7.2    **PBGC Settlement** .....................................................................................27
    7.3    **Liquidation of the Debtors** .....................................................................27
    7.4    **Effectuating Documents; Further Transactions** ...................................33
    7.5    **Cancellation of Instruments and Stock** .................................................34
    7.6    **Disposition of Books and Records** ..........................................................34
    7.7    **Corporate Existence and Dissolution of Debtors** ................................34
    7.8    **Closing the Chapter 11 Cases** ................................................................34

**Article VIII. DISTRIBUTIONS UNDER THE PLAN** ..............................................35

    8.1    **Distributions on Allowed General Unsecured Claims** ..........................35
    8.2    **Timing of Distributions** ..........................................................................35
    8.3    **Delivery of Distributions** ........................................................................35
    8.4    **Undeliverable and Unclaimed Distributions** .........................................36
    8.5    **Transfer of Claims** ...................................................................................37
    8.6    **Manner of Payment** .................................................................................37
    8.7    **Time Bar to Cash Payments by Check** ..................................................37
    8.8    **No Fractional Cents** .................................................................................37
    8.9    **Setoffs and Recoupment** .........................................................................37
    8.10   **Allocation of Plan Distributions Between Principal and Interest** ........38
    8.11   **Distributions After Effective Date** ........................................................38
    8.12   **Interest on Claims** ...................................................................................38
    8.13   **No Distribution in Excess of Allowed Amount of Claim** ....................38
    8.14   **Payment of Taxes on Distributions Received Pursuant to the Plan** .........................................................................................................38
    8.15   **Reserves** ....................................................................................................38
    8.16   **Withholdings** ............................................................................................39
    8.17   **De Minimis Distributions** .......................................................................39

**Article IX. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS** ...........................................39

    9.1    **Claims Administration Responsibilities** ................................................39
    9.2    **Claims Objections** ....................................................................................39
    9.3    **Estimation of Claims** ..............................................................................40
    9.4    **Adjustment to Claims Without Objection** ............................................40
    9.5    **No Distributions Pending Allowance** .....................................................41

9.6     Distributions After Allowance ................................................................ 41
9.7     Disallowance of Certain Claims .............................................................. 41
9.8     [Reserved] .................................................................................................. 41
9.9     Amendments to Claims ............................................................................ 41
9.10    Claims Paid and Payable by Third Parties ............................................ 41

Article X. EXECUTORY CONTRACTS AND LEASES ........................................................ 42

10.1    Executory Contracts and Unexpired Leases Deemed Rejected ............ 42
10.2    Bar Date For Rejection Damages ............................................................ 42

Article XI. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ............................ 42

11.1    Conditions Precedent to the Effective Date ........................................... 42
11.2    Waiver of Conditions Precedent to the Effective Date ......................... 43
11.3    Satisfaction of Conditions ....................................................................... 43

Article XII. EFFECT OF CONFIRMATION ........................................................................ 43

12.1    Compromise and Settlement of Claims, Equity Interests, and
       Controversies ............................................................................................ 43
12.2    Binding Effect ........................................................................................... 44
12.3    Reservation of Causes of Action/Reservation of Rights ....................... 44

Article XIII. EXCULPATION, RELEASE, INJUNCTION, AND RELATED
             PROVISIONS ....................................................................................... 44

13.1    Exculpation ............................................................................................... 44
13.2    Releases by Debtors, the Estates, the Liquidating Trust, and the
       Liquidating Trustee ................................................................................... 45
13.3    Claims under Title I of ERISA ............................................................... 46
13.4    Avoidance Actions/Objections ................................................................ 46
13.5    Injunction .................................................................................................. 46
13.6    Terms of Stays and Injunctions .............................................................. 46

Article XIV. RETENTION OF JURISDICTION .................................................................. 47

Article XV. MISCELLANEOUS PROVISIONS ................................................................... 48

15.1    Effectuating Documents and Further Transactions ................................ 48
15.2    Date of Distributions and Other Actions ................................................ 48
15.3    Withholding and Reporting Requirements .............................................. 49
15.4    Corporate Action ...................................................................................... 49
15.5    Modification of Plan ................................................................................. 49
15.6    Revocation or Withdrawal of the Plan .................................................... 49
15.7    Plan Supplement ....................................................................................... 50
15.8    Payment of Statutory Fees ....................................................................... 50
15.9    Dissolution of the Creditors' Committee ................................................ 50

15.10    Exemption from Transfer Taxes................................................................50
15.11    Expedited Tax Determination .................................................................51
15.12    Exhibits/Schedules..................................................................................51
15.13    Substantial Consummation ....................................................................51
15.14    Severability of Plan Provisions..............................................................51
15.15    Governing Law .......................................................................................51
15.16    Conflicts...................................................................................................51
15.17    Reservation of Rights .............................................................................52
15.18    Post-Confirmation Reporting.................................................................52
15.19    Notices.....................................................................................................52

# SECOND AMENDED JOINT PLAN OF LIQUIDATION OF FBI WIND DOWN, INC. AND ITS SUBSIDIARIES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

FBI Wind Down, Inc. (f/k/a Furniture Brands International, Inc.) ("FBI") and its above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") hereby propose the following joint plan of liquidation under chapter 11 of the Bankruptcy Code:

## ARTICLE I.
## DEFINED TERMS

**1.1** "**Adequate Protection Claims**" means rights to adequate protection arising under sections 361, 363, and 364 of the Bankruptcy Code to the extent granted under the DIP Orders.

**1.2** "**Administrative Expense Claim**" means any Claim for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(2) of the Bankruptcy Code, including (a) Professional Fee Claims and (b) any post-petition taxes entitled to administrative expense priority under the Bankruptcy Code; provided, however, that any fees or charges assessed against the Debtors' Estates under section 1930 of chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Expense Claim and shall be paid in accordance with Section 15.8 of the Plan.

**1.3** "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code.

**1.4** "**Allowed**" means, with reference to any Claim against the Debtors (including any Administrative Expense Claim), (a) any Claim that has been listed by the Debtors in the Schedules (as such Schedules may be amended by the Debtors or the Liquidating Trustee from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not Disputed or Contingent, and for which no proof of Claim has been filed, (b) any timely filed proof of Claim or request for payment of Administrative Expense Claim, as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, and which applicable period of limitations has expired, (c) any Claim expressly allowed by a Final Order or under the Plan, or (d) any Claim that is compromised, settled or otherwise resolved pursuant to the authority granted to the Liquidating Trustee under Section 9.1 of the Plan and the Liquidating Trust Agreement; provided, however, that Claims temporarily allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered Allowed Claims; provided, further, that any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code shall not be considered an Allowed Claim.

**1.5** "**Allowed PBGC Claims**" means the following Allowed Claims: (a) an Allowed Administrative Expense Claim in the amount of $1,076,395 (corresponding to proof of claim no. 3166); and (b) the Allowed PBGC GUC Claims, each as set forth in the PBGC Settlement.

**1.6** "**Allowed PBGC GUC Claims**" means Allowed General Unsecured Claims each in the amount of $296,752,267 (corresponding to proofs of claim no. 3166, 3167, and 3168) against AT, the Broyhill Debtors, the FBI Debtors, the HDM Debtors, the Lane Debtors, and the Thomasville Debtors, in accordance with the PBGC Settlement.

**1.7** **"A/P/S Claim"** means any Claim that is an Administrative Expense Claim, Priority Non-Tax Claim, Priority Tax Claim, or Secured Claim.

**1.8** **"Assets"** means the assets of each of the Debtors, of any nature whatsoever, including all property of the Estates under and pursuant to section 541 of the Bankruptcy Code, Cash, Causes of Action, rights, interests and property, real and personal, tangible and intangible, including all files, books and records of the Estates.

**1.9** **"AT"** means AT Wind Down, Inc.

**1.10** **"AT Net Distributable Assets"** means (a) the gross amount available from the liquidation of AT's Excluded Assets (including any Litigation Proceeds allocated to AT pursuant to the Distribution Model Methodology) minus (b) (i) the amount of all Allowed and Disputed A/P/S Claims allowed against or allocated to AT pursuant to the Distribution Model Methodology, (ii) the amount of all costs of administering the AT Estate, as allocated pursuant to the Distribution Model Methodology, (iii) the Liquidating Trust Expenses allocated to AT pursuant to the Distribution Model Methodology, and (iv) Distributions to holders of Allowed Convenience Claims against AT, and (c) increased or decreased to take into account distributions on account of Intercompany Claims by or against AT pursuant to the Distribution Model Methodology.

**1.11** **"Avoidance Actions"** means any and all avoidance, recovery, subordination, or other actions or remedies that may be brought on behalf of the Debtors or their estates under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502(d), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and/or 553 of the Bankruptcy Code.

**1.12** **"Ballot"** means the form distributed to each holder of an Impaired Claim or Equity Interest that is entitled to vote to accept or reject the Plan on which is to be indicated an acceptance or rejection of the Plan.

**1.13** **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

**1.14** **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware or any other court of the United States having jurisdiction over the Chapter 11 Cases.

**1.15** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and the Local Bankruptcy Rules, as amended from time to time.

**1.16** **"Bar Date"** means (i) November 29, 2013, at 5:00 p.m. and (ii) such other date(s) fixed by order(s) of the Bankruptcy Court, by which all Persons, including governmental units, asserting a Claim against any Debtor must have filed a Proof of Claim against such Debtor or be forever barred from asserting such Claim.

**1.17** **"Broyhill Debtors"** means, collectively, BFI Wind Down, Inc., BHF Wind Down, Inc., BR Wind Down Inc., and BT Wind Down, Inc.

**1.18** **"Broyhill Debtors Net Distributable Assets"** means (a) the gross amount available from the liquidation of the Broyhill Debtors' Excluded Assets (including any Litigation Proceeds allocated to the Broyhill Debtors pursuant to the Distribution Model Methodology) plus (b) the amount of the Net HHG Sale Proceeds allocated to the Broyhill Debtors pursuant to the Distribution Model Methodology minus (c) (i) the amount of all Allowed and Disputed A/P/S Claims allowed against or allocated to the Broyhill Debtors pursuant to the Distribution Model Methodology, (ii) the amount of all costs of administering the Broyhill Debtors' Estates, as allocated pursuant to the Distribution Model Methodology, (iii) the Liquidating Trust Expenses allocated to the Broyhill Debtors pursuant to the Distribution Model Methodology, and (iv) Distributions to holders of Allowed Convenience Claims against the Broyhill Debtors, and (d) increased or decreased to take into account distributions on account of Intercompany Claims by or against the Broyhill Debtors pursuant to the Distribution Model Methodology.

**1.19** **"Business Day"** means any day, other than a Saturday, Sunday, or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.20** **"Cash" or "$"** means the legal tender of the United States of America, including any wire transfer or instrument negotiable for legal tender of the United States of America.

**1.21** *[Reserved]*

**1.22** **"Causes of Action"** means all claims, causes of action, third-party claims, counterclaims and crossclaims (including any Causes of Action described in the Disclosure Statement) of the Debtors and/or their Estates that may be pending on the Effective Date or instituted after the Effective Date against any Person based in law, equity, or otherwise, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted as of the date of entry of the Confirmation Order, including Avoidance Actions.

**1.23** **"Chapter 11 Cases"** means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court and jointly administered under Case No. 13-12329 (CSS).

**1.24** **"Claim"** means any right to payment from the Debtors or from property of the Debtors or from their Estates, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown, or asserted; or any right to an equitable remedy for breach of performance by the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.25** **"Claim Objection"** means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate, or estimate any Claim (including the resolution of any request for payment of any Administrative Expense Claim).

**1.26** **"Claims Agent"** means the Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, or its successors and assigns.

**1.27** **"Claims Register"** shall mean the official register of Claims maintained by the Claims Agent.

**1.28** **"Class"** means a category of holders of Claims or Equity Interests set forth in Article III of the Plan.

**1.29** **"Collateral"** means any property or interest in property of the Debtors' Estates subject to a Lien, charge, right of setoff, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.30** **"Confirmation"** means entry of the Confirmation Order on the docket of the Chapter 11 Cases.

**1.31** **"Confirmation Date"** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**1.32** **"Confirmation Hearing"** means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.33** **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan.

**1.34** **"Consummation"** means the occurrence of the Effective Date.

**1.35** **"Consenting Creditor"** has the meaning given such term in Section 7.2(a) hereof.

**1.36** **"Contingent"** means, with reference to a Claim, a Claim the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened, or been triggered as of the date on which such Claim is sought to be estimated or an Objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

**1.37** **"Convenience Claim"** means a Claim, subject to Section 8.1 of this Plan, against the Debtors that would otherwise be a General Unsecured Claim that (a) was scheduled or filed on or prior to the Bar Date in an amount less than or equal to $10,000 or (b) is in an amount that has been reduced to $10,000 pursuant to a Convenience Class Election made by the holder of such Claim; provided, however, that: (i) where any portion(s) of a Claim has been transferred on or after the Petition Date, any transferred portion(s) shall continue to be treated together with such Claim as a single Claim for purposes of determining whether such Claim qualifies as a Convenience Claim; and (ii) any General Unsecured Claim that was originally Allowed in excess of $10,000 may not be subdivided into multiple General Unsecured Claims of $10,000 or less for purposes of receiving treatment as a Convenience Claim.

**1.38** **"Convenience Class Election"** means an irrevocable election made on the Ballot by the holder of a Claim against the Debtors that would otherwise be a General Unsecured Claim in an

amount greater than $10,000 to reduce such Claim to $10,000 in order to be treated as a Convenience Claim. Subject to the occurrence of the Effective Date, such election shall be deemed to amend such General Unsecured Claim to reduce the amount of such Claim to $10,000.

**1.39** **"Creditors' Committee"** means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

**1.40** **"De Minimis Distribution"** means a distribution to be made in accordance with the terms of this Plan that is $50.00 or less.

**1.41** **"Debtor Group"** means the consolidated FBI Debtors, the consolidated Broyhill Debtors, the consolidated Lane Debtors, the consolidated Thomasville Debtors, the consolidated HDM Debtors, or AT.

**1.42** **"Debtors"** means each of FBI Wind Down, Inc., AT Wind Down, Inc., BFI Wind Down, Inc., BHF Wind Down, Inc., BR Wind Down, Inc., BT Wind Down, Inc., FBH Wind Down, Inc., FBO Wind Down, Inc., FBRC Wind Down, Inc., HFI Wind Down, Inc., HR Wind Down, Inc., HT Wind Down, Inc., LFI Wind Down, Inc., LHFR Wind Down, Inc., LV Wind Down, Inc., MSFI Wind Down, Inc., TFI Wind Down, Inc., THF Wind Down, Inc., and TR Wind Down, Inc.

**1.43** **"Debtors-in-Possession"** means the Debtors in their capacity as debtors-in-possession in the Chapter 11 Cases under sections 1107(a) and 1108 of the Bankruptcy Code.

**1.44** **"DIP Orders"** means (a) the *Interim Order Authorizing the Debtors to (A) Obtain Post-Petition Financing on a Super-Priority, Senior Secured Basis, (B) Use Cash Collateral, (C) Repay the Prepetition Revolver in Full, (II) Granting Adequate Protection to Certain Prepetition Lenders, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing*, entered on September 11, 2013 [Docket No. 78], (b) the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing on a Superpriority, Senior Secured Basis and (B) Repay Existing Postpetition Term Loan in Full, (II) Granting Adequate Protection to certain Prepetition Lenders (III) Modifying the Automatic Stay, And (IV) Scheduling A Final Hearing*, entered on October 3, 2013 [Docket No. 312], and (c) *Final Order (Final) (I) Authorizing The Debtors To (A) Obtain Postpetition Financing On A Superprioity, Senior Secured Basis And (B) Repay Existing Postpetition And Prepetition Term Loan In Full, (II) Granting Adequate Protection To Certain Prepetition Lenders, And (III) Modifying The Automatic Stay*, entered on October 11, 2013 [Docket No. 377].

**1.45** **"Disallowed"** means, with reference to any Claim, (a) a Claim, or any portion thereof, that has been disallowed by a Final Order, (b) a Claim, or any portion thereof, that is expressly disallowed under the Plan, or (c) unless scheduled by a Debtor-in-Possession as a fixed, liquidated, non-contingent, and undisputed Claim, a Claim as to which a proof of Claim bar date has been established by the Bankruptcy Code, Bankruptcy Rules, or Final Order but no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order, notwithstanding anything in section 506(d) of the Bankruptcy Code to the contrary.

**1.46** **"Disclosure Statement"** means that certain disclosure statement relating to the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented, or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.47** **"Disclosure Statement Order"** means the order of the Bankruptcy Court approving, among other things, the adequacy of the Disclosure Statement and establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, entered by the Bankruptcy Court on May 29, 2014.

**1.48** **"Disputed"** means, with reference to any Claim, a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim.

**1.49** **"Distribution"** means a delivery of Cash by the Liquidating Trustee to the holders of Allowed Claims pursuant to this Plan.

**1.50** **"Distribution Model"** means the financial model attached hereto as <u>Exhibit 1</u> and incorporated herein fully by reference.

**1.51** **"Distribution Model Methodology"** means the allocation of Assets, Liabilities and proceeds from the sale of Estates' Assets, including the Foreign Non-Debtor Affiliates, as set forth in the Distribution Model.

**1.52** **"Distribution Pro Rata Share"** means the ratio (expressed as a percentage) of the amount of an Allowed General Unsecured Claim to the aggregate amount of all Allowed General Unsecured Claims in a particular Class on the date of a Distribution plus the Disputed Claim amount of all remaining Disputed General Unsecured Claims in such Class.

**1.53** **"Effective Date"** means a Business Day selected by the Debtors, after consultation with the Creditors' Committee, on or after the Confirmation Date, on which (a) no stay of the Confirmation Order is in effect and (b) the conditions precedent to the effectiveness of the Plan specified in Section 11.1 of the Plan shall have been satisfied or waived as provided in Section 11.2 of the Plan.

**1.54** **"Equity Interest"** means, as of the Petition Date, any capital stock or other ownership interest in the Debtors, whether or not transferable, and any option, call, warrant or right to purchase, sell or subscribe for an ownership interest or other equity security in any of the Debtors.

**1.55** **"Estate"** means the estate of any of the "Debtors" in the Chapter 11 Cases that was created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

**1.56** **"Excess Litigation Proceeds"** means twenty percent (20%) of PBGC's pro rata share of any Net Litigation Proceeds after the Liquidating Trust receives the first $20,000,000 of Net Litigation Proceeds on or after the Effective Date.

**1.57** **"Excluded Assets"** means the Assets that were excluded from the HHG Sale.

**1.58** **"FBI"** means FBI Wind Down, Inc.

**1.59** **"FBI Debtors"** means, collectively, FBI Wind Down, Inc., FBH Wind Down, Inc., FBO Wind Down, Inc., and FBRC Wind Down, Inc.

**1.60** **"FBI Debtors Net Distributable Assets"** means (a) the gross amount available from the liquidation of the FBI Debtors' Excluded Assets (including any Litigation Proceeds allocated to the FBI Debtors pursuant to the Distribution Model Methodology) plus (b) the amount of the Net HHG Sale Proceeds allocated to the FBI Debtors pursuant to the Distribution Model Methodology minus (c) (i) the amount of all Allowed and Disputed A/P/S Claims allowed against or allocated to the FBI Debtors pursuant to the Distribution Model Methodology, (ii) the amount of all costs of administering the FBI Debtors' Estates, as allocated pursuant to the Distribution Model Methodology, (iii) the Liquidating Trust Expenses allocated to the FBI Debtors pursuant to the Distribution Model Methodology, and (iv) Distributions to holders of Allowed Convenience Claims against the FBI Debtors, and (d) increased or decreased to take into account distributions on account of Intercompany Claims by or against the FBI Debtors pursuant to the Distribution Model Methodology.

**1.61** **"Final Order"** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending or, (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 9024 of the Federal Rules of Bankruptcy Procedure, or any applicable analogous rule, may be (but has not been) filed relating to such order shall not prevent such order from being a Final Order.

**1.62** **"Foam Litigation"** means that certain case styled *In re Polyurethane Foam Antitrust Litigation /Furniture Brands International, Inc. v. Carpenter Co., et al.*, No. 12-10009 (N.D. Ohio Apr. 27, 2012).

**1.63** **"Foreign Non-Debtor Affiliates"** means, collectively, Furniture Brands Asia, Ltd., Furniture Brands Hangzhou Co., Ltd., Furniture Brands de Mexico S. de R.L. de C.V., Maitland-Smith Asia Holdings Limited, Maitland-Smith Export (L) Bhd., Maitland-Smith Cebu, Inc., Decorative Hardware Solutions (L) Bhd., P.T. Maitland-Smith, Maitland-Smith, Limited, and Furniture Brands Canada ULC.

**1.64** **"General Unsecured Claim"** means any Claim against any of the Debtors other than an Adequate Protection Claim, Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Secured Tax Claim, Other Secured Claim, Convenience Claim, Intercompany Claim, Subordinated Securities Claim, and Equity Interests.

**1.65**    **"Governmental Unit"** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**1.66**    **"HDM Debtors"** means, collectively, HFI Wind Down, Inc., HR Wind Down, Inc., HT Wind Down, Inc., and MSFI Wind Down, Inc.

**1.67**    **"HDM Debtors Net Distributable Assets"** means (a) the gross amount available from the liquidation of the HDM Debtors' Excluded Assets (including any Litigation Proceeds allocated to the HDM Debtors pursuant to the Distribution Model Methodology) plus (b) the amount of the Net HHG Sale Proceeds allocated to the HDM Debtors pursuant to the Distribution Model Methodology minus (c) (i) the amount of all Allowed and Disputed A/P/S Claims allowed against or allocated to the HDM Debtors pursuant to the Distribution Model Methodology, (ii) the amount of all costs of administering the HDM Debtors' Estates, as allocated pursuant to the Distribution Model Methodology, (iii) the Liquidating Trust Expenses allocated to the HDM Debtors pursuant to the Distribution Model Methodology, and (iv) Distributions to holders of Allowed Convenience Claims against the HDM Debtors, and (d) increased or decreased to take into account distributions on account of Intercompany Claims by or against the HDM Debtors pursuant to the Distribution Model Methodology.

**1.68**    **"HHG Sale"** means the sale approved by the *Order (I) Approving Sale of All Acquired Assets: (II) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief*, entered on November 22, 2013 [Docket No. 833], and which sale closed on November 25, 2013.

**1.69**    **"Impaired"** means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

**1.70**    **"Intercompany Claim"** shall mean any Claim by a Debtor against another Debtor, subject to the limitations set forth in Section 7.1(c) of the Plan.

**1.71**    **"IRS"** means the Internal Revenue Service.

**1.72**    **"KPS DIP Financing Agreement"** means that certain Senior Secured Super-Priority Debtor in Possession Credit Agreement, dated as of October 3, 2013, by and among Furniture Brands International, the other borrowers thereto, the certain other parties designated as "Credit Parties" thereto, the financial institutions party thereto, and Bank of America, N.A., as agent, as amended, restated, modified, supplemented, or replaced from time to time.

**1.73**    **"Lane Debtors"** means, collectively, LFI Wind Down, Inc., LHFR Wind Down, Inc., and LV Wind Down, Inc.

**1.74**    **"Lane Debtors Net Distributable Assets"** means (a) the gross amount available from the liquidation of the Lane Debtors' Excluded Assets (including any Litigation Proceeds allocated to the Lane Debtors pursuant to the Distribution Model Methodology) plus (b) the amount of the Net HHG Sale Proceeds allocated to the Lane Debtors pursuant to the Distribution Model Methodology minus (c) (i) the amount of all Allowed and Disputed A/P/S Claims allowed against or allocated to the Lane Debtors pursuant to the Distribution Model Methodology, (ii) the amount of all costs of administering the Lane Debtors' Estates, as allocated pursuant to the

Distribution Model Methodology, (iii) the Liquidating Trust Expenses allocated to the Lane Debtors pursuant to the Distribution Model Methodology, and (iv) Distributions to holders of Allowed Convenience Claims against the Lane Debtors, and (d) increased or decreased to take into account distributions on account of Intercompany Claims by or against the Lane Debtors pursuant to the Distribution Model Methodology.

**1.75** **"Liabilities"** mean any and all costs, expenses, damages, losses, penalties, fines, judgments, Claims, Liens, obligations, demands, injuries, settlements, awards, fines, taxes, fees, indebtedness, or other liabilities of any nature, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, liquidated or unliquidated, matured or not matured, contingent or direct, whether arising at common law, in equity, or under any statute, based in whole or in part on any act or omission or other occurrence arising or taking place prior to the Effective Date.

**1.76** **"Lien"** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.77** **"Liquidating Trust"** means the liquidating trust established by this Plan and described in Section 7.3 of the Plan and in the Liquidating Trust Agreement.

**1.78** **"Liquidating Trust Agreement"** means the agreement establishing and delineating the terms and conditions of the Liquidating Trust and filed as part of the Plan Supplement.

**1.79** **"Liquidating Trust Assets"** means all of the Estates' Assets transferred to the Liquidating Trust pursuant to Section 7.3(c) the Plan.

**1.80** **"Liquidating Trust Beneficiaries"** means the holders of Allowed General Unsecured Claims under this Plan, whether or not such Claims are Allowed as of the Effective Date.

**1.81** **"Liquidating Trust Oversight Committee"** means the committee appointed pursuant to Section 7.3 of the Plan to oversee the activities of the Liquidating Trust and the Liquidating Trustee.

**1.82** **"Liquidating Trust Expenses"** means all actual and necessary costs and expenses incurred by the Liquidating Trust in connection with carrying out the obligations of the Liquidating Trust pursuant to the terms of this Plan and the Liquidating Trust Agreement.

**1.83** **"Liquidating Trustee"** means the Person appointed to act as trustee of the Liquidating Trust in accordance with the terms of this Plan, the Confirmation Order, and the Liquidating Trust Agreement, or any successor appointed in accordance with the terms of this Plan and the Liquidating Trust Agreement.

**1.84** **"Local Bankruptcy Rules"** means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

**1.85** **"Litigation Proceeds"** means the proceeds from all Causes of Action pursued by or for the benefit of the Liquidating Trust (including any proceeds recovered by the Liquidating Trust from the Foam Litigation and Avoidance Actions but excluding any litigation to collect on any Excluded Assets as specified in the Distribution Model Methodology).

01:15708708.1

9

**1.86**  **"Net HHG Sale Proceeds"** means the proceeds from the HHG Sale, taking into account post-closing adjustments, minus (i) the repayment of the loans under the KPS DIP Financing Agreement and (ii) the payment of related fees and expenses.

**1.87**  **"Net Litigation Proceeds"** means the amount of any Litigation Proceeds after satisfaction of all fees, costs and expenses, including attorney's fees, incurred by the Liquidating Trust in the prosecution of such litigation claims.

**1.88**  **"Oaktree DIP Financing Agreement"** means that certain Senior Secured Super-Priority Debtor in Possession Credit Agreement, dated as of September 11, 2013, by and among Furniture Brands International, the other borrowers thereto, the certain other parties designated as "Credit Parties" thereto, the financial institutions party thereto, and Nexbank SSB, as agent, as amended, restated, modified, supplemented, or replaced from time to time.

**1.89**  **"Other Secured Claim"** means any Secured Claim other than a Secured Tax Claim.

**1.90**  **"PBGC"** means the Pension Benefit Guaranty Corporation.

**1.91**  **"PBGC Incremental Cash"** means $6,000,000 in Cash to be held by the Liquidating Trustee from the PBGC's initial aggregate pro rata distribution on its Allowed PBGC GUC Claims under the Plan and distributed to Consenting Creditors in accordance with the PBGC Settlement and Section 7.2 of this Plan.

**1.92**  **"PBGC Minimum Funding Lien Claim"** means a claim in the amount of $2,171,338, which is secured against the proceeds from the HHG Sale attributable to the Foreign Non-Debtor Affiliates.

**1.93**  **"PBGC Settlement"** means the settlements and compromises by and among the Debtors, PBGC, and the Creditors' Committee as set forth in the *Settlement Agreement by and Among the Debtors, PBGC, and the Creditors' Committee (I) Fixing the Amount of PBGC's Claims, (II) Providing for Termination of Debtors' Pension Plan, (III) Increasing Distributions to General Unsecured Creditors, and (IV) Resolving Related Matters* dated March 31, 2014, which was approved by order of the Bankruptcy Court entered on April 29, 2014.

**1.94**  **"Person"** means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, Governmental Unit, or any other form of legal entity.

**1.95**  **"Petition Date"** means September 9, 2013, the date on which the Debtors commenced their Chapter 11 Cases.

**1.96**  **"Plan"** means this plan of liquidation under chapter 11 of the Bankruptcy Code, including the Plan Supplement and the exhibits and schedules hereto and thereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**1.97**  **"Plan Supplement"** means the supplement or supplements to the Plan containing certain documents relevant to the implementation of the Plan, including the Liquidating Trust

01:15708708.1

10

Agreement and the list of executory contracts and unexpired leases to be assumed pursuant to Section 10.1 of this Plan.

**1.98** **"Prepetition Revolver Credit Agreement"** means that certain Credit Agreement, dated as of September 25, 2012, by and among, Furniture Brands International, Inc., as Borrower Representative, the other borrowers thereto, certain other parties designated as "Credit Parties" thereto, the financial institutions from time to time party thereto, General Electric Capital Corporation, as agent, General Electric Capital Corporation, Bank of America, N.A., and Wells Fargo Bank, National Association, as co-collateral agents, General Electric Capital Corporation and Bank of America, N.A., as syndication agent, and Wells Fargo Bank, National Association, GE Capital Markets, Inc., and Bank of America, N.A., as lead arrangers and bookrunners, as amended, restated, modified, supplemented, or replaced from time to time.

**1.99** **"Prepetition Term Loan Agreement"** means that certain Credit Agreement, dated as of September 25, 2012, by and among, Furniture Brands International, Inc., as Borrower Representative, the other borrowers thereto, certain other parties designated as "Credit Parties" thereto, the financial institutions party thereto, Nexbank SSB as successor agent to Pathlight Capital LLC, as administrative agent and collateral agent, and Wells Fargo Bank, National Association, as documentation agent, as amended, restated, modified, supplemented, or replaced from time to time.

**1.100** **"Priority Non-Tax Claim"** means a Claim entitled to priority in payment as specified in sections 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

**1.101** **"Priority Tax Claim"** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.102** **"Professional Fee Claim"** means any Claim of a professional retained in the Chapter 11 Cases by the Debtors-in-Possession or the Creditors' Committee, pursuant to sections 327, 328 and 1103 of the Bankruptcy Code or otherwise, for compensation or reimbursement of costs and expenses relating to services incurred prior to and including the Effective Date, when and to the extent any such Claim is Allowed by the Bankruptcy Court pursuant to sections 330, 331, 503(b) or 1103 of the Bankruptcy Code.

**1.103** **"Ratable Proportion"** means, with reference to any Distribution on account of any Allowed General Unsecured Claim in any Class, the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed and Disputed General Unsecured Claims held by Consenting Creditors against the Debtors without taking into account any individual Debtor Group.

**1.104** **"Rejection Bar Date"** means the deadline by which a counterparty to an executory contract or an unexpired lease of the Debtors rejected under this Plan must file a proof of Claim for damages arising from such rejection by the Debtors of such executory contract or unexpired lease, and shall be thirty (30) calendar days after the Effective Date or such other deadline established for filing a Rejection Claim by a Final Order of the Bankruptcy Court; provided, however, if an earlier rejection bar date was established by order of the Bankruptcy Court with

respect to a rejected executory contract or unexpired lease, such earlier rejection bar date shall apply.

**1.105 "Rejection Claim"** means any Claim for damages as a result of the rejection under the Plan of any executory contract or unexpired lease. All Rejection Claims shall be treated as General Unsecured Claims under the Plan.

**1.106 "Released Parties"** means the professionals retained and employed by the Debtors and the Debtors-in-Possession pursuant to a Final Order of the Bankruptcy Court, and each of their respective agents and representatives.

**1.107 "Reserve"** has the meaning given such term in Section 8.15 hereof.

**1.108 "Schedules"** means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the official bankruptcy forms in the Chapter 11 Cases, as the same may have been amended or supplemented through the Confirmation Date pursuant to Bankruptcy Rules 1007 and 1009. For the avoidance of doubt, Schedules do not include any schedules or exhibits to the Plan or the Plan Supplement.

**1.109 "Section 345 Securities"** means securities or instruments of any type permitted under section 345 of the Bankruptcy Code.

**1.110 "Secured Claim"** means any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

**1.111 "Secured Tax Claim"** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code (determined irrespective of any time limitations therein and including any related Secured Claim for penalties).

**1.112 "Subordinated Securities Claim"** shall mean any Claim arising from rescission of a purchase or sale of a security of FBI or an Affiliate of FBI, for damages arising from the purchase or sale of such security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

**1.113 "Supplemental Administrative Expense Claims Bar Date"** means the date as set forth in Section 4.1(b) of this Plan.

**1.114 "Thomasville Debtors"** means, collectively, TFI Wind Down Inc., THF Wind Down, Inc., and TR Wind Down, Inc.

**1.115 "Thomasville Debtors Net Distributable Assets"** means (a) the gross amount available from the liquidation of the Thomasville Debtors' Excluded Assets (including any Litigation Proceeds allocated to the Thomasville Debtors pursuant to the Distribution Model Methodology) plus (b) the amount of the Net HHG Sale Proceeds allocated to the Thomasville Debtors

pursuant to the Distribution Model Methodology minus (c) (i) the amount of all Allowed and Disputed A/P/S Claims allowed against or allocated to the Thomasville Debtors pursuant to the Distribution Model Methodology, (ii) the amount of all costs of administering the Thomasville Debtors' Estates, as allocated pursuant to the Distribution Model Methodology, (iii) the Liquidating Trust Expenses allocated to the Thomasville Debtors pursuant to the Distribution Model Methodology, and (iv) Distributions to holders of Allowed Convenience Claims against the Thomasville Debtors, and (d) increased or decreased to take into account distributions on account of Intercompany Claims by or against the Thomasville Debtors pursuant to the Distribution Model Methodology.

**1.116 "Unclassified Claim"** means any Claim that is an Administrative Expense Claim or a Priority Tax Claim.

**1.117 "Unimpaired"** means, with respect to a Claim or Equity Interest, that such Claim or Equity Interest is not Impaired as a result of being paid in full in Cash under the Plan.

**1.118 "Unliquidated"** means with reference to a Claim, a Claim, the amount of Liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is asserted or sought to be estimated.

**1.119 "U.S. Trustee"** means the Office of the United States Trustee for the District of Delaware.

**1.120 "U.S. Trustee Fees"** means fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

**1.121 "Voting Deadline"** means July 3, 2014 at 5:00 p.m. (prevailing Eastern Time), the date and time by which all ballots to accept or reject the Plan must be received in order to be counted, as set forth by the Disclosure Statement Order.

## ARTICLE II.
## INTERPRETATION OF PLAN

**2.1    Application of Definitions; Rules of Construction; Computation of Time**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender. For purposes of the Plan, (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented and (c) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. A capitalized term used herein that is not defined herein shall have the meaning

assigned to that term in the Bankruptcy Code or in the Exhibits hereto. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Unless otherwise indicated herein, all references to dollars means United States dollars. In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 shall apply.

## 2.2   Relief Sought by Filing the Plan

The filing of the Plan constitutes, among other things, a motion by the Debtors pursuant to Bankruptcy Rules 9019 to approve the settlements and comprises set forth in Section 7.1 of the Plan.

## ARTICLE III.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

### 3.1   Classification

The following table (a) designates the Classes of Claims against, and Equity Interests in, the Debtors, (b) specifies the Classes of Claims and Equity Interests that are Impaired by the Plan and therefore are deemed to reject the Plan or are entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) specifies the Classes of Claims and Equity Interests that are Unimpaired by the Plan and therefore are deemed to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

| Class | Description | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| 3 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 4A | General Unsecured Claims against FBI Debtors | Impaired | Yes |
| 4B | General Unsecured Claims against Broyhill Debtors | Impaired | Yes |
| 4C | General Unsecured Claims against Lane Debtors | Impaired | Yes |
| 4D | General Unsecured Claims against Thomasville Debtors | Impaired | Yes |
| 4E | General Unsecured Claims against HDM Debtors | Impaired | Yes |
| 4F | General Unsecured Claims against AT | Impaired | Yes |
| 5A | Convenience Claims against FBI Debtors | Impaired | Yes |

| 5B | Convenience Claims against Broyhill Debtors | Impaired | Yes |
|----|---------------------------------------------|----------|-----|
| 5C | Convenience Claims against Lane Debtors | Impaired | Yes |
| 5D | Convenience Claims against Thomasville Debtors | Impaired | Yes |
| 5E | Convenience Claims against HDM Debtors | Impaired | Yes |
| 5F | Convenience Claims against AT | Impaired | Yes |
| 6 | Subordinated Securities Claims | Impaired | No (deemed to reject) |
| 7 | Equity Interests in Debtors | Impaired | No (deemed to reject) |

## ARTICLE IV.
## PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND OTHER UNCLASSIFIED CLAIMS

**4.1    Administrative Expense Claims**

    (a)    Treatment of Non-Professional Fee Administrative Expense Claims

        Except to the extent that a holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) shall receive, in full and final satisfaction, settlement, release, and discharge of such Allowed Administrative Expense Claim, Cash in an amount equal to such Allowed Administrative Expense Claim on the latest of: (i) on or as soon as practicable after the Effective Date if such Administrative Expense Claim is Allowed as of the Effective Date; (ii) on or as soon as reasonably practicable after the date such Administrative Expense Claim is Allowed; and (iii) on the date such Allowed Administrative Expense Claim becomes due and payable, or as soon thereafter as is practicable.

    (b)    Supplemental Administrative Expense Claims Bar Date

        Holders of Administrative Expense Claims (other than Professional Fee Claims) arising during the period from March 1, 2014 through the Effective Date must file requests for payment of Administrative Expense Claims so as to be **actually received on or before 4:00 p.m. (prevailing Eastern Time) on the day that is thirty (30) calendar days after the Effective Date (the "Supplemental Administrative Expense Claims Bar Date")** by the Claims Agent at the following address:

        If by first-class mail:

            FBI Wind Down, Inc. Claims Processing Center
            c/o Epiq Bankruptcy Solutions, LLC

01:15708708.1

15

FDR Station, P.O. Box 5075
New York, New York 10150-5075

If by hand delivery or overnight:

FBI Wind Down, Inc. Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, New York 10017

All such requests for payment must: (i) be signed by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant; (ii) be written in the English language; (iii) denominate the claim in lawful currency of the United States as of the Supplemental Administrative Expense Bar Date; (iv) indicate the particular Debtor against which the claim is asserted; and (v) include supporting documentation (or, if such documentation is voluminous, include a summary of such documentation) or an explanation as to why such documentation is not available  The notice of the Effective Date delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f), substantially in the form included in the Plan Supplement, shall set forth the Supplemental Administrative Expense Claims Bar Date and shall constitute notice of such bar date.

The following claims are **not** required to be filed on or before the Supplemental Administrative Expense Claims Bar Date:

(a)     Professional Fee Claims;

(b)     any Administrative Expense Claims that (i) have been previously paid by the Debtors in the ordinary course of business or otherwise or (ii) have otherwise been satisfied;

(c)     any Administrative Expense Claims previously filed with Epiq or the Court;

(d)     any Administrative Expense Claim that has been Allowed by prior order of the Bankruptcy Court;

(e)     any claims by any officer or director of the Debtors immediately prior to the Effective Date;

(f)     any claims for bonus payments arising under the Key Employee Incentive Plan approved by order of the Bankruptcy Court [Docket No. 374];

(g)     any claims by any direct or indirect non-debtor subsidiary or affiliate of the Debtors;

(h)     any claims for fees payable to the Clerk of this Court;

(i)     any U.S. Trustee Fees; and

01:15708708.1

16

(j)    any claim by a governmental unit for a tax or penalty described in section 503(b)(1)(B) and (C) of the Bankruptcy Code, as provided for in section 503(b)(1)(D).

Any Person that is required to file a request for payment of an Administrative Expense Claim (other than Professional Fee Claims) under the Plan and that fails to do so by the Supplemental Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claim, and such Administrative Expense Claim shall not be enforceable against the Liquidating Trust, the Liquidating Trustee, the Debtors, the Estates, and their respective properties, and the Liquidating Trust, the Liquidating Trustee, Debtors, the Estates, and their respective properties shall be forever discharged from any and all Liability with respect to such Administrative Expense Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Administrative Expense Claims shall, as of the Effective Date, be subject to the permanent injunction pursuant to Section 13.5 of the Plan and the Confirmation Order.

## 4.2    Adequate Protection Claims

The Adequate Protection Claims of the holders of Claims under the Prepetition Term Loan Agreement and the Prepetition Revolver Credit Agreement have been satisfied in full and no Distributions shall be made with respect to any such Adequate Protection Claims under the Plan.

## 4.3    Professional Fee Claims

The Liquidating Trustee shall pay Allowed Professional Fee Claims, as soon as practicable after the later of the Effective Date and the date upon which any order awarding fees and expenses becomes a Final Order, in accordance with the terms of any order entered by the Bankruptcy Court governing the payment of fees and expenses during the course of the Chapter 11 Cases, and after application of any retainer received by such Professionals. Professional Fee Claims shall be paid from the Liquidating Trust Assets.

All Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under section 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file, on or before the date that is sixty (60) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order relating to or allowing any such claim. The Liquidating Trustee is authorized to pay reasonable compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval in accordance with the Liquidating Trust Agreement.

## 4.4    Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each

01:15708708.1

17

holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Allowed Priority Tax Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, Cash in the amount of such Allowed Priority Tax Claim (a) on, or as soon as practicable after, the of: (i) the Effective Date and (ii) the date such Allowed Priority Tax Claim becomes an Allowed Claim; or (b) in regular payments over a period of time not to exceed five (5) years after the Petition Date with interest at a rate determined in accordance with section 511 of the Bankruptcy Code; provided, that the first such regular payment shall represent a percentage recovery at least equal to that expected to be received by the most favored holders of Allowed General Unsecured Claims; provided further, that the Liquidating Trustee may prepay the entire amount of the Allowed Priority Tax Claim at any time in its sole discretion.

## ARTICLE V.
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**5.1   Class 1: Priority Non-Tax Claims**

    (a)   <u>Classification</u>: Class 1 shall consist of the Priority Non-Tax Claims.

    (b)   <u>Treatment</u>: Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Allowed Priority Non-Tax Claim, Cash in the amount equal to such Allowed Claim, without interest, on or as soon as practicable after the later of (x) the Effective Date and (y) the date that such Claim becomes an Allowed Claim.

**5.2   Class 2: Secured Tax Claims**

    (a)   <u>Classification</u>: Class 2 shall consist of the Secured Tax Claims.

    (b)   <u>Treatment</u>:  Except to the extent that a holder of an Allowed Secured Tax Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each holder of an Allowed Secured Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Allowed Priority Tax Claim and any Liens securing such Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, Cash in the amount of such Allowed Secured Tax Claim (a) on, or as soon as practicable after, the latest of: (i) the Effective Date and (ii) the date such Allowed Secured Tax Claim becomes an Allowed Claim; or (b) in regular payments over a period of time not to exceed five (5) years after the Petition Date with interest at a rate determined in accordance with section 511 of the Bankruptcy Code; provided, that the first such regular payment shall represent a percentage recovery at least equal to that expected to be received by the most favored holders of Allowed General Unsecured Claims; provided further, that the Liquidating Trustee may prepay the entire amount of the Allowed Secured Tax Claim at any time in its sole discretion.

01:15708708.1

### 5.3    Class 3: Other Secured Claims

(a)    <u>Classification</u>: Class 3 shall consist of the Other Secured Claims.

(b)    <u>Treatment</u>:  Except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Allowed Other Secured Claim and any Liens securing such Claim, at the sole option of the Debtors or the Liquidating Trustee, as applicable, (i) Cash in an amount equal to such Allowed Other Secured Claim on or as soon as practicable after the Effective Date, or (ii) the Collateral securing its Allowed Other Secured Claim, in full and complete satisfaction of such Allowed Other Secured Claim on or as soon as practicable after the Effective Date.

For the avoidance of doubt, any and all Liens under the Prepetition Revolver Credit Agreement, the Prepetition Term Loan Agreement, the Oaktree DIP Financing Agreement, and the KPS DIP Financing Agreement are deemed extinguished and any and all Claims arising under such agreements are deemed satisfied in full and shall not constitute Other Secured Claims under the Plan and shall not receive any distribution under the Plan.

### 5.4    Class 4A: General Unsecured Claims Against the FBI Debtors

(a)    <u>Classification</u>: Class 4A shall consist of the General Unsecured Claims against the FBI Debtors.

(b)    <u>Treatment</u>:  Except to the extent that a holder of an Allowed General Unsecured Claim in Class 4A agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each holder of an Allowed General Unsecured Claim in Class 4A shall receive, in full and final satisfaction, settlement, and release of such Allowed General Unsecured Claim its Distribution Pro Rata Share of FBI Net Distributable Assets.

### 5.5    Class 4B: General Unsecured Claims Against the Broyhill Debtors

(a)    <u>Classification</u>: Class 4B shall consist of the General Unsecured Claims against the Broyhill Debtors.

(b)    <u>Treatment</u>:  Except to the extent that a holder of an Allowed General Unsecured Claim in Class 4B agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each holder of an Allowed General Unsecured Claim in Class 4B shall receive, in full and final satisfaction, settlement, and release of such Allowed General Unsecured Claim its Distribution Pro Rata Share of Broyhill Net Distributable Assets.

**5.6    Class 4C: General Unsecured Claims Against the Lane Debtors**

   (a)    <u>Classification</u>: Class 4C shall consist of the General Unsecured Claims against the Lane Debtors.

   (b)    <u>Treatment</u>: Except to the extent that a holder of an Allowed General Unsecured Claim in Class 4C agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each holder of an Allowed General Unsecured Claim in Class 4C shall receive, in full and final satisfaction, settlement, and release of such Allowed General Unsecured Claim its Distribution Pro Rata Share of Lane Net Distributable Assets.

**5.7    Class 4D: General Unsecured Claims Against the Thomasville Debtors**

   (a)    <u>Classification</u>: Class 4D shall consist of the General Unsecured Claims against the Thomasville Debtors.

   (b)    <u>Treatment</u>: Except to the extent that a holder of an Allowed General Unsecured Claim in Class 4D agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each holder of an Allowed General Unsecured Claim in Class 4D shall receive, in full and final satisfaction, settlement, and release of such Allowed General Unsecured Claim its Distribution Pro Rata Share of Thomasville Net Distributable Assets.

**5.8    Class 4E: General Unsecured Claims Against the HDM Debtors**

   (a)    <u>Classification</u>: Class 4E shall consist of the General Unsecured Claims against the HDM Debtors.

   (b)    <u>Treatment</u>: Except to the extent that a holder of an Allowed General Unsecured Claim in Class 4E agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each holder of an Allowed General Unsecured Claim in Class 4E shall receive, in full and final satisfaction, settlement, and release of such Allowed General Unsecured Claim its Distribution Pro Rata Share of HDM Net Distributable Assets.

**5.9    Class 4F: General Unsecured Claims Against AT**

   (a)    <u>Classification</u>: Class 4F shall consist of the General Unsecured Claims against AT.

   (b)    <u>Treatment</u>: Except to the extent that a holder of an Allowed General Unsecured Claim in Class 4F agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each holder of an Allowed General Unsecured Claim in Class 4F shall receive, in full and final satisfaction, settlement, and release of such Allowed General Unsecured Claim its Distribution Pro Rata Share of AT Net Distributable Assets.

01:15708708.1

5.10    **Class 5A: Convenience Claims Against FBI Debtors**

    (a)    <u>Classification</u>: Class 5A shall consist of the Convenience Claims against the FBI Debtors.

    (b)    <u>Treatment</u>:  Except to the extent that a holder of an Allowed Convenience Claim in Class 5A agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each holder of an Allowed Convenience Claim in Class 5A shall receive, in full and final satisfaction, settlement, and release of such Allowed Convenience Claim, Cash in an amount equal to 9.0% of the amount of such Allowed Convenience Claim on or as reasonably practicable after the later of (i) the Effective Date or (ii) thirty (30) days after the date on which such Claim becomes Allowed.

5.11    **Class 5B: Convenience Claims Against Broyhill Debtors**

    (a)    <u>Classification</u>: Class 5B shall consist of the Convenience Claims against the Broyhill Debtors.

    (b)    <u>Treatment</u>:  Except to the extent that a holder of an Allowed Convenience Claim in Class 5B agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each holder of an Allowed Convenience Claim in Class 5B shall receive, in full and final satisfaction, settlement, and release of such Allowed Convenience Claim, Cash in an amount equal to 9.0% of the amount of such Allowed Convenience Claim on or as reasonably practicable after the later of (i) the Effective Date or (ii) thirty (30) days after the date on which such Claim becomes Allowed.

5.12    **Class 5C: Convenience Claims Against Lane Debtors**

    (a)    <u>Classification</u>: Class 5C shall consist of the Convenience Claims against the Lane Debtors.

    (b)    <u>Treatment</u>:  Except to the extent that a holder of an Allowed Convenience Claim in Class 5C agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each holder of an Allowed Convenience Claim in Class 5C shall receive, in full and final satisfaction, settlement, and release of such Allowed Convenience Claim, Cash in an amount equal to 11.0% of the amount of such Allowed Convenience Claim on or as reasonably practicable after the later of (i) the Effective Date or (ii) thirty (30) days after the date on which such Claim becomes Allowed.

5.13    **Class 5D: Convenience Claims Against Thomasville Debtors**

    (a)    <u>Classification</u>: Class 5D shall consist of the Convenience Claims against the Thomasville Debtors.

(b)     Treatment:  Except to the extent that a holder of an Allowed Convenience Claim
in Class 5D agrees to a less favorable treatment or has been paid by any
applicable Debtor prior to the Effective Date, each holder of an Allowed
Convenience Claim in Class 5D shall receive, in full and final satisfaction,
settlement, and release of such Allowed Convenience Claim, Cash in an amount
equal to 10.0% of the amount of such Allowed Convenience Claim on or as
reasonably practicable after the later of (i) the Effective Date or (ii) thirty (30)
days after the date on which such Claim becomes Allowed.

**5.14    Class 5E: Convenience Claims Against HDM Debtors**

(a)     Classification:  Class 5E shall consist of the Convenience Claims against the HDM
Debtors.

(b)     Treatment:  Except to the extent that a holder of an Allowed Convenience Claim
in Class 5E agrees to a less favorable treatment or has been paid by any applicable
Debtor prior to the Effective Date, each holder of an Allowed Convenience Claim
in Class 5E shall receive, in full and final satisfaction, settlement, and release of
such Allowed Convenience Claim, Cash in an amount equal to 15.0% of the
amount of such Allowed Convenience Claim on or as reasonably practicable after
the later of (i) the Effective Date or (ii) thirty (30) days after the date on which
such Claim becomes Allowed.

**5.15    Class 5F: Convenience Claims Against AT**

(a)     Classification:  Class 5F shall consist of the Convenience Claims against the
Thomasville Debtors.

(b)     Treatment:  Except to the extent that a holder of an Allowed Convenience Claim
in Class 5F agrees to a less favorable treatment or has been paid by any applicable
Debtor prior to the Effective Date, each holder of an Allowed Convenience Claim
in Class 5F shall receive, in full and final satisfaction, settlement, and release of
such Allowed Convenience Claim, Cash in an amount equal to 8.0% of the amount
of such Allowed Convenience Claim on or as reasonably practicable after
the later of (i) the Effective Date or (ii) thirty (30) days after the date on which
such Claim becomes Allowed.

**5.16    Class 6: Subordinated Securities Claims**

(a)     Classification:  Class 6 shall consist of all Subordinated Securities Claims.

(b)     Treatment:  Each holder of an Allowed Subordinated Securities Claim will not
receive or retain any property under the Plan on account of such Allowed
Subordinated Securities Claim.  The treatment of Subordinated Securities Claims
under the Plan is in accordance with and gives effect to the provisions of section
510(b) of the Bankruptcy Code.

**5.17    Class 7: Equity Interests in Debtors**

01:15708708.1

(a)    Classification:  Class 7 shall consist of the Equity Interests in the Debtors.

(b)    Treatment:  On the Effective Date, the Equity Interests in the Debtors shall be cancelled and the holders of the Equity Interests shall not be entitled to, and shall not receive or retain, any property on account of such Equity Interests under the Plan.

### 5.18    Reservation of Rights Regarding Claims and Equity Interests

Except as otherwise explicitly provided in the Plan, nothing shall affect either the Debtors' or the Liquidating Trustee's rights and defenses, both legal and equitable, with respect to any Claims or Equity Interests, including all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

# ARTICLE  VI.
## ACCEPTANCE OR REJECTION OF THE PLAN

### 6.1    Voting of Claims

(a)    Classes Entitled to Vote

Each holder of a Claim, that is not a Disallowed Claim and for which no objection to the allowance thereof, motion to estimate, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed and remains unresolved, in Classes 4A, 4B, 4C, 4D, 4E, 4F, 5A, 5B, 5C, 5D, 5E, and 5F, or the holder of a Claim that has been temporarily allowed for voting purposes only under Bankruptcy Rule 3018(a) in such Classes, shall be entitled to vote separately to accept or reject the Plan, as provided in the Disclosure Statement Order or any other applicable order of the Bankruptcy Court.

(b)    Classes Deemed to Accept

Each of Classes 1, 2, and 3 is Unimpaired under the Plan, and each such Class is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

(c)    Classes Deemed to Reject

Claims in Class 6 and Equity Interests in Class 7 will not receive or retain any property on account of such Claims and Equity Interests under the Plan.  In accordance with section 1126(g) of the Bankruptcy Code, each of Classes 6 and 7 is conclusively presumed to have rejected the Plan.

### 6.2    Elimination of Vacant Classes

Any Class of Claims or Equity Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a holder of an Allowed Claim or Allowed Equity Interest, or a holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be

deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

**6.3    Nonconsensual Confirmation**

If any Impaired Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan in accordance with Section 15.5 of the Plan or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code or both. With respect to Impaired Classes of Claims that are deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

**6.4    Revocation of the Plan**

Subject to Section 15.6 hereof, the Debtors-in-Possession, after consultation with the Committee, may revoke and withdraw the Plan in its entirety at any time prior to entry of the Confirmation Order. If the Plan is so revoked or withdrawn, then it shall be deemed null and void.

## ARTICLE VII.
## MEANS OF IMPLEMENTATION OF THE PLAN

**7.1    Global Settlement**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates a compromise and settlement of numerous inter-Debtor, Debtor-creditor, and inter-creditor issues designed to achieve an economic settlement of Claims against the Debtors and an efficient resolution of these Chapter 11 Cases. This global settlement constitutes a settlement of a number of the potential litigation issues, including issues regarding substantive consolidation, the validity and enforceability of Intercompany Claims, the allocation of Assets among the Estates, and the nature and amount of PBGC's claims. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the following compromises or settlements and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, their Estates, their creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness. Each provision of the global settlement shall be deemed non-severable from each other and from the remaining terms of the Plan. As set forth in detail below, the global settlement will be implemented as follows:

(a)    <u>Settlement of Issues Relating to Intercompany Claims</u>

Intercompany Claims shall be adjusted, continued, extinguished, or discharged to the extent determined appropriate pursuant to the Distribution Model Methodology. Any such transaction may be effected on or subsequent to the Effective Date without any further action by the Debtors, the Debtors-in-Possession, or the Liquidating Trustee.

01:15708708.1

(b)     Settlement of Issues Relating to Allocation of the Debtors' Assets

Commencing on the Effective Date, the Debtors shall implement the allocation of the Debtors' Assets to the FBI Debtors, the Broyhill Debtors, the Lane Debtors, the Thomasville Debtors, the HDM Debtors, and AT in accordance with the Distribution Model Methodology.

(c)     Settlement of Issues Relating to Partial Substantive Consolidation

Entry of the Confirmation Order shall constitute approval, pursuant to sections 105(a) and 1123(a)(5) of the Bankruptcy Code, effective as of the Effective Date, of (a) the substantive consolidation of the Estates of the FBI Debtors, (b) the substantive consolidation of the Estates of the Broyhill Debtors, (c) the substantive consolidation of the Estate of the Lane Debtors, (d) the substantive consolidation of the Estates of the Thomasville Debtors, (e) the substantive consolidation of the Estates of the HDM Debtors, in each case for the purposes of confirming and consummating the Plan, including voting and Confirmation.  For the avoidance of doubt, the Plan shall serve as a motion by the Debtors seeking entry of an order approving the foregoing partial substantive consolidation.

The partial substantive consolidation called for in the Plan shall not (other than for purposes related to funding Distributions under the Plan) affect (a) the legal and organizational structure of the Debtors, (b) executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed or rejected, (c) any agreements entered into by the Liquidating Trustee on or after the Effective Date, and (d) the Debtors' or the Liquidating Trustee's ability to subordinate or otherwise challenge Claims on an entity-by-entity basis.  Notwithstanding the partial substantive consolidation called for herein, each and every Debtor shall remain responsible for the payment of U.S. Trustee Fees until its particular case is closed, dismissed, or converted.  Moreover, the Debtors reserve the right to seek confirmation of the Plan on an entity-by-entity basis.

(i)     Consolidation of FBI Debtors

The Assets and Liabilities of each the FBI Debtors shall be deemed to be the Assets and Liabilities of a single, consolidated entity. Each and every Claim filed or to be filed in the Chapter 11 Cases against any of the FBI Debtors shall be considered filed against the consolidated FBI Debtors on and after the Effective Date. Any joint and several Liability of two or more of the FBI Debtors, and all Claims against such entities on account of such joint and several Liability, shall be considered a single Claim and single Liability against the consolidated FBI Debtors. Any guarantee by an FBI Debtor of the Liabilities of any other FBI Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan so that any Claim against any FBI Debtor and any guaranty thereof executed by any other FBI Debtor shall be deemed to be one obligation of the consolidated FBI Debtors.  Intercompany Claims between the FBI Debtors shall be waived and eliminated.

(ii)     Consolidation of Broyhill Debtors

The Assets and Liabilities of each of the Broyhill Debtors shall be deemed to be the Assets and Liabilities of a single, consolidated entity. Each and every Claim filed or to be filed in the Chapter 11 Cases against any of the Broyhill Debtors shall be considered filed against the

01:15708708.1

25

consolidated Broyhill Debtors on and after the Effective Date. Any joint and several Liability of two or more of the Broyhill Debtors, and all Claims against such entities on account of such joint and several Liability, shall be considered a single Claim and single Liability against the consolidated Broyhill Debtors. Any guarantee by a Broyhill Debtor of the Liabilities of any other Broyhill Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan so that any Claim against any Broyhill Debtor and any guaranty thereof executed by any other Broyhill Debtor shall be deemed to be one obligation of the consolidated Broyhill Debtors. Intercompany Claims between the Broyhill Debtors shall be waived and eliminated.

(iii)    *Consolidation of Lane Debtors*

The Assets and Liabilities of each of the Lane Debtors shall be deemed to be the Assets and Liabilities of a single, consolidated entity. Each and every Claim filed or to be filed in the Chapter 11 Cases against any of the Lane Debtors shall be considered filed against the consolidated Lane Debtors on and after the Effective Date. Any joint and several Liability of two or more of the Lane Debtors, and all Claims against such entities on account of such joint and several Liability, shall be considered a single Claim and single Liability against the consolidated Lane Debtors. Any guarantee by a Lane Debtor of the Liabilities of any other Lane Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan so that any Claim against any Lane Debtor and any guaranty thereof executed by any other Lane Debtor shall be deemed to be one obligation of the consolidated Lane Debtors. Intercompany Claims between the Lane Debtors shall be waived and eliminated.

(iv)    *Consolidation of Thomasville Debtors*

The Assets and Liabilities of each of the Thomasville Debtors shall be deemed to be the Assets and Liabilities of a single, consolidated entity. Each and every Claim filed or to be filed in the Chapter 11 Cases against any of the Thomasville Debtors shall be considered filed against the consolidated Thomasville Debtors on and after the Effective Date. Any joint and several Liability of two or more of the Thomasville Debtors, and all Claims against such entities on account of such joint and several Liability, shall be considered a single Claim and single Liability against the consolidated Thomasville Debtors. Any guarantee by a Thomasville Debtor of the Liabilities of any other Thomasville Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan so that any Claim against any Thomasville Debtor and any guaranty thereof executed by any other Thomasville Debtor shall be deemed to be one obligation of the consolidated Thomasville Debtors. Intercompany Claims between the Thomasville Debtors shall be waived and eliminated.

(v)    *Consolidation of HDM Debtors*

The Assets and Liabilities of each of the HDM Debtors shall be deemed to be the Assets and Liabilities of a single, consolidated entity. Each and every Claim filed or to be filed in the Chapter 11 Cases against any of the HDM Debtors shall be considered filed against the consolidated HDM Debtors on and after the Effective Date. Any joint and several Liability of two or more of the HDM Debtors, and all Claims against such entities on account of such joint and several Liability, shall be considered a single Claim and single Liability against the consolidated HDM Debtors. Any guarantee by an HDM Debtor of the Liabilities of any other

HDM Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan so that any Claim against any HDM Debtor and any guaranty thereof executed by any other HDM Debtor shall be deemed to be one obligation of the consolidated HDM Debtors. Intercompany Claims between the HDM Debtors shall be waived and eliminated.

## 7.2    PBGC Settlement

Upon (i) the entry of an order of the Bankruptcy Court approving the PBGC Settlement in all material respects and (ii) the occurrence of the Effective Date, all provisions of the PBGC Settlement that have not yet gone effective shall become effective and the Liquidating Trustee shall administer the PBGC Settlement and shall make any and all payments required pursuant to the terms thereof.

(a)    Distributions of PBGC Incremental Cash to Consenting Creditors: For the purposes of distributing the PBGC Incremental Cash, a consenting creditor shall be only (i) the holder of an Allowed General Unsecured Claim other than PBGC that (y) either voted such Claim to accept the Plan or did not vote such Claim to reject the Plan and (z) did not object to confirmation of the Plan and (ii) any subsequent holder of such Claim to the extent of such Claim (collectively, the "Consenting Creditors"). Each Consenting Creditor shall receive its Ratable Proportion (taking into account only claims held by Consenting Creditors) of PBGC Incremental Cash, in accordance with Section 8.2 of this Plan. For the avoidance of doubt, a party that holds or acquires a Claim of a creditor other than a Consenting Creditor shall not receive any distribution of PBGC Incremental Cash on account of such Claim and shall not be a Consenting Creditor to the extent of such Claim.

(b)    Distribution of Net Litigation Proceeds: No Excess Litigation Proceeds shall be distributed until all Causes of Action brought by the Liquidating Trust have been resolved by Final Order, and all such Excess Litigation Proceeds, if any, shall be reserved. Once all such Causes of Action have been resolved by Final Order, the Excess Litigation Proceeds shall be divided among the Debtor Groups pro rata based on the amount of Net Litigation Proceeds recovered by each such Debtor Group. Once each Debtor Group receives its pro rata share of the Excess Litigation Proceeds as set forth above, the Liquidating Trustee shall distribute to each holder of an Allowed General Unsecured Claim against that Debtor Group its Distribution Pro Rata Share without taking into account any PBGC GUC Claim. For the avoidance of doubt, and notwithstanding anything to the contrary in this Plan, PBGC shall not receive any distribution of the Excess Litigation Proceeds.

(c)    Payment of PBGC Minimum Funding Lien Claim: The PBGC Minimum Funding Lien Claim shall be paid in full from the Foreign Subsidiaries Reserve (as defined in the PBGC Settlement) prior to the payment of any administrative, priority, intercompany, or other claims that may be paid from the Foreign Subsidiaries Reserve on or promptly after the Effective Date.

## 7.3    Liquidation of the Debtors

(a)    Appointment of Liquidating Trustee

The Liquidating Trustee shall be selected by the members of the Creditors' Committee, after consultation with the Debtors, and shall be identified in the Liquidating Trust Agreement to be filed with the Bankruptcy Court with the Plan Supplement. The appointment of the Liquidating Trustee shall be approved in the Confirmation Order, and the Liquidating Trustee's duties shall commence as of the Effective Date. The Liquidating Trustee shall administer the Plan and the Liquidating Trust and shall serve as a representative of the Estates under section 1123(b) of the Bankruptcy Code for the purpose of enforcing Causes of Action belonging to the Estates.

In accordance with the Liquidating Trust Agreement, the Liquidating Trustee shall serve in such capacity through the earlier of (i) the date that the Liquidating Trust is dissolved in accordance with Section 7.3(j) and (ii) the date such Liquidating Trustee resigns, is terminated, or is otherwise unable to serve; provided, however, that, in the event that the Liquidating Trustee resigns, is terminated, or is otherwise unable to serve, the Liquidating Trust Oversight Committee shall appoint a successor to serve as the Liquidating Trustee in accordance with the Liquidating Trust Agreement. To the extent that the Liquidating Trust Oversight Committee does not appoint a successor within the time periods specified in the Liquidating Trust Agreement, then the Court, upon the motion of any party-in-interest, including counsel to the Liquidating Trust, shall approve a successor to serve as the Liquidating Trustee. Any such successor Liquidating Trustee shall serve in such capacity until the Liquidating Trust is dissolved.

(b)    Responsibilities of Liquidating Trustee

Responsibilities of the Liquidating Trustee shall include, but are not limited to:

(i)    administering the implementation of the Plan, including the making of the Distributions contemplated herein;

(ii)    marshalling, marketing for sale, and liquidating the Estates' Assets for Cash;

(iii)    conducting an analysis of any and all Claims and Equity Interests and prosecuting objections thereto or settling or otherwise compromising such Claims and Equity Interests, if necessary and appropriate, in accordance with Article IX of the Plan;

(iv)    maintaining and administering the Reserves in accordance with the terms of this Plan;

(v)    commencing, prosecuting, or settling claims and Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges in accordance with the Plan and paying all associated costs;

(vi)    recover and compel turnover of the Debtors' property;

(vii)    paying Liquidating Trust Expenses;

(viii)    abandoning any property constituting the Estates' Assets that cannot be sold or otherwise disposed of for value and whose Distribution to holders of Allowed Claims would not be feasible or cost-effective in the Liquidating Trustee's reasonable judgment;

(ix)    preparing and filing post-Effective Date operating reports;

(x)    filing appropriate tax returns in the exercise of the Liquidating Trustee's fiduciary obligations;

(xi)    retaining such professionals as are necessary and appropriate in furtherance of Liquidating Trustee's fiduciary obligations; and

(xii)    taking such actions as are necessary and reasonable to carry out the purposes of the Liquidating Trust, including winding down the Debtors' business affairs.

(c)    <u>Establishment of a Liquidating Trust</u>

Any and all of the Estates' Assets shall remain assets of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and on the Effective Date shall, subject to the Liquidating Trust Agreement, be transferred to and vest in the Liquidating Trust. Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the Liquidating Trust and the Liquidating Trustee shall have the right to pursue or not to pursue, or, subject to the terms of this Plan and the Liquidating Trust Agreement, compromise or settle any Liquidating Trust Assets. From and after the Effective Date, the Liquidating Trust and the Liquidating Trustee may commence, litigate, and settle any Causes of Action or Claims relating to the Liquidating Trust Assets or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Liquidating Trust and Liquidating Trustee on or after the Effective Date, except as otherwise expressly provided in this Plan and the Liquidating Trust Agreement. The Liquidating Trust shall be entitled to enforce all defenses and counterclaims to all Claims asserted against the Debtors and their Estates, including setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code.

Other than as set forth herein, no other Person may pursue such Liquidating Trust Assets on or after the Effective Date. The Liquidating Trustee shall be deemed hereby substituted as plaintiff, defendant, or in any other capacity for the Debtors in any Causes of Action pending before the Bankruptcy Court or any other court that relates to a Liquidating Trust Asset without the need for filing any motion for such relief. On the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement and shall have established the Liquidating Trust pursuant to this Plan. In the event of any conflict between the terms of this Article VII and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall control.

(d)    <u>Liquidating Trust Assets</u>

Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date and periodically thereafter if additional Liquidating Trust Assets become

01:15708708.1

29

available, the Debtors shall be deemed, subject to the Liquidating Trust Agreement, to have automatically transferred to the Liquidating Trust all of their right, title, and interest in and to all of the Liquidating Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, including the Debtors' attorney-client privilege. All such assets shall automatically vest in the Liquidating Trust free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims as set forth in the Plan and the expenses of the Liquidating Trust as set forth herein and in the Liquidating Trust Agreement. Thereupon, the Debtors shall have no interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust.

     (e)    <u>Treatment of Liquidating Trust for Federal Income Tax Purposes; No Successor-in-Interest</u>

The Liquidating Trust shall be established for the primary purpose of liquidating and distributing the assets transferred to it, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Accordingly, the Liquidating Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, make timely distributions to the Liquidating Trust Beneficiaries and not unduly prolong its duration. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement. The record holders of beneficial interests shall be recorded and set forth in a register maintained by the Liquidating Trustee expressly for such purpose.

The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust. For all federal income tax purposes, all parties (including the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets by the Debtors to the Liquidating Trust, as set forth in the Liquidating Trust Agreement, as a transfer of such assets by the Debtors to the holders of Allowed General Unsecured Claims entitled to distributions from the Liquidating Trust Assets, followed by a transfer by such holders to the Liquidating Trust. Thus, the Liquidating Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

As soon as practicable after the Effective Date, the Liquidating Trustee shall make a good faith determination of the fair market value of the Estates' Assets as of the Effective Date, <u>provided, however</u>, that the Liquidating Trustee shall not be required to hire an expert to make such a valuation. This valuation shall be used consistently by all parties (including the Debtors, the Liquidating Trustee, and the holders of General Unsecured Claims) for all federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidating Trust Assets.

The right and power of the Liquidating Trustee to invest the Liquidating Trust Assets, the proceeds thereof, or any income earned by the Liquidating Trust, shall be limited to the right and power that a liquidating trust, within the meaning of Section 301.7701-4(d) of the Treasury Regulations, is permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings or other IRS pronouncements, and to the investment guidelines of Bankruptcy Code section 345. The Liquidating Trustee may expend the

Cash of the Liquidating Trust (i) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective assets of the Liquidating Trust during liquidation, (ii) to pay the respective reasonable administrative expenses (including any taxes imposed on the Liquidating Trust) and (iii) to satisfy other respective liabilities incurred by the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement (including the payment of any taxes).

(f)     The Liquidating Trust Oversight Committee. The Creditors' Committee, after consultation with the Debtors, shall choose a minimum of three (3) individuals to serve as members of the Liquidating Trust Oversight Committee, which shall have the responsibility to review and advise the Liquidating Trustee with respect to the liquidation and distribution of the Estates' Assets in accordance with the Liquidating Trust Agreement and this Plan. The Debtors or the Creditors' Committee shall file a notice identifying the members of the Liquidating Trust Oversight Committee no later than five (5) days prior to the Voting Deadline. Vacancies on the Liquidating Trust Oversight Committee shall be filled by a Person designated by the remaining member or members of the Liquidating Trust Oversight Committee from among the holders of General Unsecured Claims, and the Liquidating Trust Oversight Committee shall use reasonable efforts to maintain such composition of the members of the Liquidating Trust Oversight Committee as existed prior to the resignation of such member. The Liquidating Trustee shall have the authority to seek an order from the Bankruptcy Court removing or replacing members of the Liquidating Trust Oversight Committee for cause. Any successor appointed pursuant to this Section shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor. For the avoidance of doubt, no member of the Liquidating Trust Oversight Committee shall be compensated for serving as a member of the Liquidating Trust Oversight Committee, provided, however, that such members may be reimbursed from the Liquidation Trust for reasonable out of pocket expenses.

Pursuant to the Liquidating Trust Agreement, the Liquidating Trustee will need the consent of at least two (2) members of the Liquating Trustee Oversight Committee, or approval of the Bankruptcy Court, before pursuing any potential Avoidance Actions under 11 U.S.C. § 547.

(g)     Expenses of Liquidating Trustee

The Liquidating Trustee Expenses shall be paid from the Liquidating Trust Assets.

(h)     Insurance; Bond

The Liquidating Trustee, in his or her sole discretion, may obtain insurance coverage (in the form of an errors and omissions policy or otherwise) with respect to the liabilities and obligations of the Liquidating Trustee and the Liquidating Trust Oversight Committee under the Liquidating Trust Agreement. Unless otherwise agreed to by the Liquidating Trust Oversight Committee, the Liquidating Trustee shall serve with a bond, the terms of which shall be agreed to by the Liquidating Trust Oversight Committee, and the cost and expense of which shall be paid by the Liquidating Trust.

(i)     Fiduciary Duties of the Liquidating Trustee

01:15708708.1

31

Pursuant to this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall act in a fiduciary capacity on behalf of the interests of all holders of Claims that will receive Distributions pursuant to the terms of this Plan.

(j)    Termination of the Liquidating Trust

The Liquidating Trust will terminate on the earlier of: (a) final liquidation, administration and distribution of the Liquidating Trust Assets in accordance with the terms of the Liquidating Trust Agreement and the Plan, and its full performance of all other duties and functions as set forth in the Liquidating Trust Agreement or the Plan; and (b) the fifth (5th) anniversary of the Effective Date. Notwithstanding the foregoing, multiple fixed term extensions can be obtained so long as Bankruptcy Court approval is obtained within six (6) months before the expiration of the term of the Liquidating Trust and each extended term provided that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust within the meaning of Section 301.7701-4(d) of the Treasury Regulations for federal income tax purposes.  After (a) the final Distributions pursuant to this Plan, (b) the filing by or on behalf of the Liquidating Trust of a certification of dissolution with the Bankruptcy Court, and (c) any other action deemed appropriate by the Liquidating Trustee, the Liquidating Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

(k)    Liability of Liquidating Trustee; Indemnification

Neither the Liquidating Trustee, the Liquidating Trust Oversight Committee, their respective members, employees, employers, designees or professionals, or any of their duly designated agents or representatives (each, an "Exculpation Party" and collectively, the "Exculpation Parties") shall be liable for losses, claims, damages, liabilities or expenses in connection with the affairs of the Liquidation Trust or for the act or omission of any other Exculpation Party, nor shall the Exculpation Parties be liable for any act or omission taken or omitted to be taken pursuant to the discretion, powers and authority conferred, or in good faith believed by to be conferred by the Liquidating Trust Agreement or the Plan other than for specific acts or omissions resulting from such Exculpation Party's willful misconduct, gross negligence or fraud.  The Liquidating Trustee shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee and the Liquidating Trust Oversight Committee shall be entitled to enjoy all of the rights, powers, immunities and privileges of an official committee of unsecured creditors.  The Liquidating Trustee, or the Liquidating Trust Oversight Committee, may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing.  Notwithstanding such authority, neither the Liquidating Trustee nor the Liquidating Trust Oversight Committee shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or Liquidating Trust Oversight Committee or their respective members and/or designees, unless such determination is based on willful misconduct, gross negligence, or fraud.  The Liquidating Trust shall indemnify and hold harmless the Exculpation Parties (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable

01:15708708.1

attorneys' fees, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such persons for actions or omissions as a result of willful misconduct, gross negligence, or fraud. Persons dealing or having any relationship with the Liquidating Trustee shall have recourse only to the Liquidating Trust Assets and shall look only to the Liquidating Trust Assets to satisfy any liability or other obligations incurred by the Liquidating Trustee or the Liquidating Trust Oversight Committee to such person in carrying out the terms of the Liquidating Trust Agreement, and neither the Liquidating Trustee nor the Liquidating Trust Oversight Committee shall have any personal obligation to satisfy any such liability. The Liquidating Trustee and/or the Liquidating Trust Oversight Committee members shall not be liable whatsoever except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into the Liquidating Trust Agreement against any of them. The Liquidating Trust shall promptly pay expenses reasonably incurred by any Exculpation Party in defending, participating in, or settling any action, proceeding or investigation in which such Exculpation Party is a party or is threatened to be made a party or otherwise is participating in connection with the Liquidating Trust Agreement or the duties, acts or omissions of the Liquidating Trustee or otherwise in connection with the affairs of the Liquidating Trust, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Exculpation Party hereby undertakes, and the Liquidating Trust hereby accepts his or her undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Exculpated Party is not entitled to be indemnified therefor under the Liquidating Trust Agreement. The foregoing indemnity in respect of any Exculpation Party shall survive the termination of such Exculpation Party from the capacity for which they are indemnified.

     (l)    <u>Full and Final Satisfaction Against Liquidating Trust</u>

On and after the Effective Date, the Liquidating Trust shall have no liability on account of any Claims or Equity Interests except as set forth in the Plan and in the Liquidating Trust Agreement. All payments and all Distributions made by the Liquidating Trustee under the Plan shall be in full and final satisfaction, settlement, and release of and in exchange for all Claims or Equity Interests against the Debtors.

**7.4    Effectuating Documents; Further Transactions**

The appropriate officer and/or director of the Debtors or the Liquidating Trustee, as applicable, shall be, and hereby are, authorized to execute, deliver, file, and record such contracts, instruments, releases, indentures, certificates, and other agreements or documents, and take such other actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 7.5    Cancellation of Instruments and Stock

On the Effective Date, all instruments evidencing or creating any indebtedness or obligation of the Debtors, except such instruments that are authorized or issued under this Plan, shall be canceled and extinguished. Additionally, as of the Effective Date, all Equity Interests in all of the Debtors, and any and all warrants, options, rights, or interests with respect to such Equity Interests that have been issued, could be issued, or that have been authorized to be issued but that have not been issued, shall be deemed cancelled and extinguished without any further action of any party; provided, however, that FBI shall issue one (1) share of common stock to the Liquidating Trust. The Liquidating Trustee shall have all power and authority that may be or could have been exercised, with respect to the Liquidating Trust Assets, by any officer, director, shareholder or other party acting in the name of the Debtors or their estates with like effect as if duly authorized, exercised and taken by action of such officers, directors, shareholders or other party.

The holders of, or parties to, the cancelled notes, membership interests, share certificates, and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates, and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to this Plan.

### 7.6    Disposition of Books and Records

After the Effective Date, the Debtors shall transfer the Debtors' books and records in the Debtors' possession to the Liquidating Trust. From and after the Effective Date, the Liquidating Trustee shall continue to preserve and maintain all documents and electronic data transferred to the Liquidating Trust by the Debtors, and the Liquidating Trustee, subject to Section 7.8 hereof, shall not destroy or otherwise abandon any such documents and records (in electronic or paper format) absent further order of the Court after a hearing upon notice to parties-in-interest; provided, however, that the Liquidating Trustee may destroy or abandon such books and records upon entry of a Final Order closing the last Chapter 11 Case.

### 7.7    Corporate Existence and Dissolution of Debtors

Immediately after the Effective Date, the Liquidating Trustee shall be authorized to take, in his or her sole and absolute discretion, all actions reasonably necessary to dissolve one or more of the Debtors under applicable laws, including under the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation. Upon the final Distributions, any Debtors that have not been previously dissolved shall be deemed dissolved for all purposes without the necessity for other or further actions to be taken by or on behalf of the Debtors, and the Liquidating Trustee shall be authorized to file any certificate of cancellation or other documents as may be necessary or desirable to terminate the legal existence of FBI.

### 7.8    Closing the Chapter 11 Cases

Upon the Effective Date, the Chapter 11 Cases for the Debtors, except for FBI, shall be deemed closed, and the Liquidating Trustee shall submit separate orders to the Bankruptcy Court

01:15708708.1

34

under certification of counsel closing each such Chapter 11 Case. After all Causes of Action and Disputed Claims have been resolved, the U.S. Trustee Fees have been paid, all of the Estates' Assets have been distributed in accordance with this Plan, or at such earlier time as the Liquidating Trustee deems appropriate, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case for FBI, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

## ARTICLE VIII.
## DISTRIBUTIONS UNDER THE PLAN

### 8.1   Distributions on Allowed General Unsecured Claims

All Allowed General Unsecured Claims held by a single creditor against one or more Debtors within a Debtor Group as set forth in Section 7.1(c), shall be aggregated and treated as a single Claim. At the written request of the Liquidating Trustee, any creditor holding multiple Allowed General Unsecured Claims shall provide to the Liquidating Trustee a single address to which any Distributions shall be sent.

### 8.2   Timing of Distributions

(a)     Distributions on Account of Allowed A/P/S Claims. The Liquidating Trustee shall pay any Allowed A/P/S Claim against the Debtors, as soon as practicable after the later of (a) the Effective Date and (b) the date upon which any such Claim becomes an Allowed Claim.

(b)     Interim Distributions on Account of Allowed General Unsecured Claims. Subject to approval of the Liquidating Trust Oversight Committee as set forth in the Liquidating Trust Agreement, (a) the Liquidating Trustee shall make an interim distribution to holders of Allowed General Unsecured Claims at least semi-annually provided that any such distribution is not unduly burdensome to the Liquidating Trust, and (b) shall have the right to make more frequent interim distributions if the Liquidating Trustee determines that such interim distributions are warranted and economical; provided, however, that any such distribution shall only be made if the Liquidating Trustee retains amounts reasonably necessary to meet contingent liabilities, to maintain the value of the Liquidating Trust Assets during liquidation, and to satisfy other liabilities or expenses incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement.

(c)     Final Distributions on Allowed General Unsecured Claims. Notwithstanding anything else in this Plan, upon the settlement and satisfaction of all A/P/S Claims, the completion of the prosecution and/or settlement of all Claims Objections and Causes of Action, and the completion of the sale and/or liquidation of all Assets, the Liquidating Trustee shall distribute, as soon as practicable, all remaining Liquidating Trust Assets to holders of Allowed General Unsecured Claims.

### 8.3   Delivery of Distributions

Subject to Bankruptcy Rule 9010, all Distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or its agents, as applicable, unless

01:15708708.1

the Debtors or the Liquidating Trustee have been notified in writing of a change of address, including by the filing of a proof of claim by such holder that contains an address for such holder different than the address of such holder as set forth on the Schedules. Nothing in this Plan shall require the Debtors or the Liquidating Trustee to attempt to locate any holder of an Allowed Claim.

The Liquidating Trustee shall require any holders of Allowed Claims or other distributee to furnish to the Liquidating Trustee in writing an Employer Identification Number or Taxpayer Identification Number as assigned by the Internal Revenue Service and the Liquidating Trustee may condition any Distribution to any holders of Allowed Claims or other distributee upon receipt of such identification number. If the Employer Identification Number or Taxpayer Identification Number are not provided by the required deadline established by the Liquidating Trustee, the Claim of any holders of Allowed Claims or other distributee may be expunged and no Distribution will be made by the Liquidating Trustee to such holders of Allowed Claims or other distributee.

## 8.4    Undeliverable and Unclaimed Distributions

(a)    Holding Undeliverable and Unclaimed Distributions

If the Distribution to any holder of an Allowed Claim is returned as undeliverable or is otherwise unclaimed, no additional Distributions shall be made to such holder unless and until the Liquidating Trustee is notified in writing of such holder's then-current address. Nothing contained in this Plan shall require the Liquidating Trustee to attempt to locate any holder of an Allowed Claim.

The Liquidating Trustee shall make all Distributions that have become deliverable as soon as reasonably practicable after such Distribution has become deliverable or has been claimed.

(b)    Failure to Claim Unclaimed/Undeliverable Distributions

Subject to Section 8.7 of the Plan, any holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed Distribution within six (6) months after the Distribution is made shall be deemed to have its Claim expunged and shall have forfeited its right to such undeliverable or unclaimed Distribution and any subsequent Distribution on account of its Allowed Claim and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution or any subsequent Distribution on account of its Allowed Claims against the Debtors, their Estates, their property or the Assets. In such cases, such unclaimed/undeliverable Distributions shall be redistributed and paid to holders of Allowed Claims in accordance with the Plan, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary.

(c)    Charitable Donations

On or about the time that a final Distribution is made and upon the Liquidating Trustee determining that there are insufficient funds remaining to warrant a further Distribution to holders of Claims under the Plan, the Liquidating Trustee, with the approval of the Liquidating

Trust Oversight Committee, may donate any undistributed funds to one or more charities selected by the Liquidating Trustee, provided that any charity selected shall not be affiliated with or connected to the Debtors or the Liquidating Trustee.

**8.5    Transfer of Claims**

The Claims Register shall remain open after the Effective Date and the Liquidating Trustee shall recognize any transfer of Claims in accordance with Bankruptcy Rules 3001(e) at any time thereafter, provided that for purposes of each Distribution, the Liquidating Trustee will not recognize any transfer during the period commencing thirty (30) calendar days prior to making any Distribution. Except as otherwise provided in the Plan, any transfer of a Claim, whether occurring prior to or after the Confirmation Date, shall not affect or alter the classification and treatment of such Claim under the Plan and any such transferred Claim shall be subject to classification and treatment under the Plan as if such Claim was held by the transferor who held such Claim on the Petition Date.

**8.6    Manner of Payment**

At the option of the Liquidating Trustee, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

**8.7    Time Bar to Cash Payments by Check**

Checks issued by, or on behalf of, the Debtors or the Liquidating Trust on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any check shall be made in writing directly to the Liquidating Trustee by the holder of the Allowed Claim with respect to which such check originally was issued on or before the later of (a) the first anniversary of the Effective Date, (b) the first anniversary of the date on which the Claim at issue became an Allowed Claim, and (c) six (6) months after the date the check was issued.  After such dates, all Claims in respect of void checks shall be expunged, extinguished, discharged, and forever barred, and the proceeds of such checks shall revest in the Liquidating Trust.

**8.8    No Fractional Cents**

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down) with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**8.9    Setoffs and Recoupment**

The Liquidating Trustee may, but shall not be required to, set off against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim any Claims of any nature whatsoever that the Debtors may have against the claimant; provided, however, neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or

release by the Debtors or Liquidating Trust of any such claim they may have against such claimant.

## 8.10   Allocation of Plan Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such Distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

## 8.11   Distributions After Effective Date

Distributions made after the Effective Date shall be deemed to have been made on the Effective Date.

## 8.12   Interest on Claims

Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims, and no holders of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition through the date such Claim becomes an Allowed Claim. Except as expressly provided herein, no Claim shall be Allowed to the extent that it is for postpetition interest or other similar charges.

## 8.13   No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim.

## 8.14   Payment of Taxes on Distributions Received Pursuant to the Plan

All Persons that receive Distributions under the Plan shall be responsible for reporting and paying, as applicable, all appropriate federal, state and local taxes on account of such Distributions.

## 8.15   Reserves

On the Effective Date, and after making all Distributions required to be made on the Effective Date under the Plan, the Liquidating Trustee shall establish and maintain a separate reserve (each, a "Reserve") for the estimated amount of the Liquidating Trust Expenses, as well as each Class of Claims and Unclassified Claims, which Reserve shall be administered by the Liquidating Trustee. To the extent that Reserves are established and maintained for the benefit of any holder of a Disputed Claim, such Reserves shall include an amount of Cash equal to the Distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (a) the amount of the Disputed Claim, (b) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to

section 502 of the Bankruptcy Code for purposes of allowance, which amount, unless otherwise ordered by the Bankruptcy Court, shall constitute and represent the maximum amount in which such Claim ultimately may become an Allowed Claim, or (c) such other amount as may be agreed upon by the holder of such Disputed Claim and the Liquidating Trustee.

## 8.16    Withholdings

The Liquidating Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive, or other governmental requirement.

## 8.17    *De Minimis* Distributions

All De Minimis Distributions will be held by the Liquidating Trustee for the benefit of the Holders of Allowed Claims entitled to such De Minimis Distributions. When the aggregate amount of De Minimis Distributions held by the Liquidating Trustee for the benefit of a holder of a Claim exceeds $50.00, the Liquidating Trustee will distribute such De Minimis Distributions to such holder. If, at the time that the final Distribution under this Plan is to be made, the De Minimis Distributions held by the Liquidating Trustee for the benefit of a holder of a Claim total less than $50.00, such funds shall not be distributed to such holder, but rather, such Claims shall be deemed expunged and such Distribution shall vest in the Liquidating Trust and be distributed to other holders of Allowed Claims in accordance with the terms of this Plan.

## ARTICLE IX.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

### 9.1    Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan and the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trustee shall have the sole authority (a) to file, withdraw, or litigate to judgment objections to Claims or Equity Interests, (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, (c) to amend the Schedules in accordance with the Bankruptcy Code, and (d) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### 9.2    Claims Objections

Unless a Claim is expressly described as an Allowed Claim pursuant to or under this Plan, or otherwise becomes an Allowed Claim prior to the Effective Date, upon the Effective Date, the Liquidating Trustee shall be deemed to have a reservation of any and all objections of the Estates to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, priority, secured or unsecured, including any and all objections to the validity or amount of any and all alleged Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, General Unsecured Claims, Subordinated Securities Claims, Equity Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract.  The Debtors' or the Liquidating Trustee's failure to object to any

Claim in the Chapter 11 Cases shall be without prejudice to the Liquidating Trustee's rights to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the Holder of such Claim.

Unless otherwise provided in this Plan or by order of the Bankruptcy Court, any objections to Claims (including Administrative Expense Claims but excluding Professional Fee Claims) by the Liquidating Trustee shall be filed and served not later than 180 days after the later of (i) the Effective Date or (ii) the date such Claim is filed (the "Claims Objection Deadline"), provided that the Liquidating Trustee may request (and the Bankruptcy Court may grant) an extension of such deadline by filing a motion with the Bankruptcy Court, based upon a reasonable exercise of the Liquidating Trustee's business judgment; provided further that with respect to Claims that, as of the Claims Objection Deadline, are subject to a pending objection (an "Initial Objection") wherein the objection to such Claim is ultimately denied, the Claims Objection Deadline shall be extended to the later of sixty (60) calendar days from the date on which (a) the Bankruptcy Court enters an order denying such Initial Objection or (b) any appellate court enters a Final Order reversing or vacating an order of the Bankruptcy Court granting such Initial Objection. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to this Plan.

**9.3     Estimation of Claims**

The Liquidating Trustee may (but is not required to) at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trustee, as applicable, previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**9.4     Adjustment to Claims Without Objection**

Any Claim that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Claims Agent at the direction of the Liquidating Trustee without the Liquidating Trustee having to file an application, motion, complaint, Objection, or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court.

**9.5     No Distributions Pending Allowance**

Notwithstanding any other provision hereof, if any portion of a Claim is Disputed, no payment or Distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes Allowed.

**9.6     Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.

**9.7     Disallowance of Certain Claims**

Any Claims held by Persons from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or by a Person that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and such Persons may not receive any Distributions on account of their Claims until such time as such Causes of Action against such Persons have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtors by such Person have been turned over or paid to the Liquidating Trust.

**9.8     [*Reserved*]**

**9.9     Amendments to Claims**

On or after the Effective Date, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Liquidating Trustee and any such new or amended Claim filed without prior authorization shall be deemed disallowed in full and expunged without any further action.

**9.10     Claims Paid and Payable by Third Parties**

A Claim shall be Disallowed without an Objection thereto having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors, the Liquidating Trust, or the Liquidating Trustee.  Distributions under the Plan shall be made on account of any Allowed Claim that is payable pursuant to one of the Debtors' insurance policies solely up to the amount of, and in full and complete satisfaction of, the portion of such Allowed Claim that is within the deductible or self-insured retention under such insurance policy.  Except as provided in this Section 9.10, no Person shall have any other recourse against the Debtors, the Estates, the Liquidating Trust, or any of their respective properties or assets on account of such deductible or self-insured retention under an insurance policy.

01:15708708.1

41

## ARTICLE X.
### EXECUTORY CONTRACTS AND LEASES

**10.1    Executory Contracts and Unexpired Leases Deemed Rejected**

On the Effective Date, all of the Debtors' executory contracts and unexpired leases will be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except to the extent (a) the Debtors previously have assumed, assumed and assigned, or rejected such executory contract or unexpired lease, (b) prior to the Effective Date, the Debtors have filed a motion to assume, assume and assign, or reject an executory contract or unexpired lease on which the Bankruptcy Court has not ruled, (c) an executory contract and unexpired lease is identified in the Plan Supplement as an executory contract or unexpired lease to be assumed or assumed and assigned pursuant to the Plan, or (d) executory contracts and unexpired leases under which the counterparty has consented to the extension of the time by which the Debtors must assume or reject to a date beyond the Effective Date. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all rejections of executory contracts and unexpired leases pursuant to this Section 10.1 and sections 365(a) and 1123 of the Bankruptcy Code.

**10.2    Bar Date For Rejection Damages**

If the rejection by the Debtors of an executory contract or an unexpired lease pursuant to Section 10.1 of the Plan results in damages to the other party or parties to such executory contract or unexpired lease, a Claim for such damages arising from such rejection shall not be enforceable against the Debtors or their Estates or agents, successors, or assigns, unless a proof of Claim is filed with the Claims Agent **so as to actually be received on or before** the Rejection Bar Date.

Any Person that is required to file a proof of Claim arising from the rejection of an executory contract or unexpired lease under the Plan and that fails to timely do so shall be forever barred, estopped, and enjoined from asserting such Claim, and such Claim shall not be enforceable against the Liquidating Trust, the Liquidating Trustee, the Debtors, the Estates, and their respective properties, and the Liquidating Trust, the Liquidating Trustee, Debtors, the Estates, and their respective properties shall be forever discharged from any and all Liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction pursuant to Section 13.5 of the Plan and the Confirmation Order.

## ARTICLE XI.
### CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**11.1    Conditions Precedent to the Effective Date**

The Effective Date shall not occur, and the Plan shall not become effective with respect to the Debtors, unless and until the following conditions are satisfied in full or waived in accordance with Section 11.2 of the Plan:

01:15708708.1

42

(a)    the Bankruptcy Court shall have entered the Confirmation Order which shall have become a Final Order;

(b)    the Bankruptcy Court shall have entered an order approving the PBGC Settlement in all material respects which shall have become a Final Order;

(c)    the Debtors and the Liquidating Trustee shall have executed the Liquidating Trust Agreement;

(d)    all actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable; and

(e)    all authorizations, consents, and regulatory approvals, rulings, letters, no-action letters, opinions, or documents, if any, that are necessary to implement the Plan or that are required by the applicable Debtor entity or applicable law, regulation, or order, in connection with the Consummation of the Plan shall have been obtained and not revoked.

## 11.2    Waiver of Conditions Precedent to the Effective Date

Each of the conditions precedent in Section 11.1 hereof may be waived, in whole or in part, by the Debtors, after consultation with the Creditors' Committee, without leave or order of the Bankruptcy Court and without any formal action on the part of the Bankruptcy Court. The Debtors and the Liquidating Trustee reserve the right to assert that any appeal from the Confirmation Order shall be moot after the Effective Date of this Plan.

## 11.3    Satisfaction of Conditions

Except as expressly provided or permitted in the Plan, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. In the event that one or more of the conditions specified in Section 11.1 hereof shall not have occurred or otherwise been waived pursuant to Section 11.2 hereof, (a) the Confirmation Order shall be vacated, (b) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (c) the Debtors' obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

## ARTICLE XII.
## EFFECT OF CONFIRMATION

## 12.1    Compromise and Settlement of Claims, Equity Interests, and Controversies

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Allowed Equity Interest or any Distribution to be made on account of such Allowed Claim or Allowed Equity Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of Claims and Equity Interests, and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trustee may compromise and settle Claims against them and Causes of Action against other Entities.

## 12.2 Binding Effect

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan, the Plan Supplement, and the Confirmation Order shall bind (a) any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns (whether or not the Claim or Equity Interests are Impaired under the Plan, whether or not such holder has vote to accept the Plan, and whether or not such holder is entitled to a Distribution under the Plan), (b) all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, (c) each Person acquiring property under the Plan or the Confirmation Order, and (d) any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors. All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

## 12.3 Reservation of Causes of Action/Reservation of Rights

Except with respect to the exculpation in Section 13.1 hereof and the releases in Section 13.2 hereof, nothing contained in the Plan shall be deemed to be a waiver or the relinquishment of any Causes of Action that the Debtors or the Liquidating Trust, as applicable, may have or may choose to assert against any Person.

## ARTICLE XIII.
## EXCULPATION, RELEASE, INJUNCTION, AND RELATED PROVISIONS

### 13.1 Exculpation

**None of the Debtors, the Debtors-in-Possession, and the current or former directors, officers, employees, Affiliates, agents, accountants, financial advisors, investment bankers, restructuring advisors, attorneys, representatives, and other professionals of or to the Debtors and the Debtors-in-Possession who served or were employed in such capacities after the Petition Date, and each of their respective agents and representatives, the Released Parties, members of the Creditors' Committee and the professionals retained by**

the Creditors' Committee shall have or incur any Liability for any Claim, Cause of Action, or other assertion of Liability for any act taken or omitted to be taken in connection with or arising out of the Chapter 11 Cases, the sale of the Debtors' assets, the formulation, dissemination, implementation, approval, confirmation, consummation, or administration of the Plan, property to be distributed under the Plan, or any other act or omission in connection with or arising out of the Chapter 11 Cases, the Plan, the Disclosure Statement, or any contract, instrument, document or other agreement related thereto; <u>provided, however</u>, that the foregoing shall not affect the Liability of any Person resulting from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, fraud, or gross negligence. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, discharges, and any other applicable law or rules protecting such Persons from liability.

**13.2    Releases by Debtors, the Estates, the Liquidating Trust, and the Liquidating Trustee**

Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and in consideration of the services of the Released Parties, (a) the Debtors, (b) their respective Estates, (c) the Liquidating Trust, and (d) the Liquidating Trustee shall release, waive, and discharge unconditionally and forever each of the Released Parties from any and all Claims, Causes of Action, and Liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising in law, equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence: (i) taking place before the Petition Date in connection with the Debtors; and (ii) in connection with or arising out of the Debtors' Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof or the property to be distributed thereunder; <u>provided</u>, that the foregoing shall not operate as a waiver of or release from any Causes of Action resulting from the willful misconduct, fraud, or gross negligence of any Released Party.

In addition, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and in consideration of the services of the Liquidating Trust and the Liquidating Trustee, the Debtors and the Estates shall release, waive, and discharge unconditionally and forever each of the Liquidating Trust and the Liquidating Trustee from any and all Claims, Causes of Action, and Liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising in law, equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence taking place before the Effective Date in connection with or arising out of the Debtors' Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof or the property to be distributed thereunder; <u>provided</u>, that the foregoing shall not operate as a waiver of or release from any Causes of Action resulting from the willful misconduct, fraud, or gross negligence of the Liquidating Trust or the Liquidating Trustee.

### 13.3    Claims under Title I of ERISA

Notwithstanding anything to the contrary in this Plan, any claim arising under Title I of ERISA for breach of fiduciary duty or relating to a prohibited transaction with respect to the Pension Plan shall not be discharged, released, or enjoined.

### 13.4    Avoidance Actions/Objections

Except with respect to the exculpation in Section 13.1 hereof and the releases in Section 13.2 hereof, in the Confirmation Order, or by Final Order of the Bankruptcy Court, as applicable, from and after the Effective Date, the Liquidating Trustee shall have the right to prosecute any and all avoidance or equitable subordination actions, recovery Causes of Action, and Objections to Claims under sections 105, 502, 510, 542 through 551, and 553 of the Bankruptcy Code that belong to the Debtors or a Debtor-in-Possession.

### 13.5    Injunction

Except as otherwise provided in the Plan, all Persons that have held, hold, or may hold Claims against or Equity Interests in the Debtors or their Estates that arose prior to the Effective Date are permanently enjoined, solely with respect to any such Claims or Equity Interests, from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trustee; (b) enforcing, attaching, collecting, or recovering, by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trustee; (c) creating, perfecting, or enforcing, in any manner, directly or indirectly, any Lien or encumbrance against the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trustee; (d) except to the extent permitted by sections 362(b), 553, 559, 560, or 561 of the Bankruptcy Code, asserting any right of setoff, subrogation, or recoupment against the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trustee; (e) pursuing any Claim or Cause of Action released pursuant to the Plan; or (f) taking any actions which interfere with the implementation or consummation of the Plan.

The rights afforded in the Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtors or any of their respective assets, properties, or Estates.

### 13.6    Terms of Stays and Injunctions

The automatic stay arising under section 362(a) of the Bankruptcy Code and the injunctions set forth in Section 13.5 of the Plan shall permanently remain in full force and effect.

## ARTICLE XIV.
## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters in connection with, arising out of or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including to:

(a)     hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of cure amounts and Claims resulting therefrom;

(b)     determine any and all adversary proceedings, applications and contested matters;

(c)     hear and determine all applications for compensation and reimbursement of expenses under sections 330, 331 and 503(b) of the Bankruptcy Code;

(d)     hear and determine any Claim Objections (including requests for estimation) in respect of Disputed Claims, in whole or in part;

(e)     enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)     issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(g)     consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including the Confirmation Order;

(h)     hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, the Liquidating Trust Agreement, any transactions or payments contemplated hereby or thereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

(i)     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any request by the Debtors), prior to the Effective Date or request by the Liquidating Trustee after the Effective Date for an expedited determination of tax issues under section 505(b) of the Bankruptcy Code;

(j)     hear and determine all disputes involving the existence, scope, and nature of the discharges granted under the Plan, the Confirmation Order or the Bankruptcy Code;

(k)     issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or

enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(l) determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m) hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(n) recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(o) enforce the terms of the Liquidating Trust Agreement and to decide any claims or disputes which may arise or result from, or be connected with, the Liquidating Trust Agreement, any breach or default under the Liquidating Trust Agreement, or the transactions contemplated by the Liquidating Trust Agreement;

(p) enforce the releases granted and injunctions issued pursuant to the Plan and the Confirmation Order;

(q) enter a final decree closing the Chapter 11 Cases; and

(r) hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XV.
## MISCELLANEOUS PROVISIONS

### 15.1   Effectuating Documents and Further Transactions

On or before the Effective Date, and without the need for any further order or authority, the Debtors shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Liquidating Trustee is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to the Plan.

### 15.2   Date of Distributions and Other Actions

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 15.3    Withholding and Reporting Requirements

In connection with this Plan and all Distributions hereunder, the Liquidating Trustee shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution. The Liquidating Trustee has the right, but not the obligation, to refrain from making a Distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

### 15.4    Corporate Action

On the Effective Date, all matters provided for under this Plan that would otherwise require approval of shareholders, directors or managers of one or more of the Debtors shall be in effect from and after the Effective Date pursuant to the applicable general business law of the states in which the Debtors are incorporated or organized, without any requirement of further action by the shareholders, directors or managers of the Debtors.

### 15.5    Modification of Plan

Alterations, amendments, or modifications of or to the Plan may be proposed in writing by the Debtors, after consultation with the Creditors' Committee, at any time prior to the Confirmation Date; provided, that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with section 1125 of the Bankruptcy Code. The Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation; provided, that the Plan, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications. A holder of a Claim that has accepted the Plan prior to any alteration, amendment, or modification will be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the holders of the Claims.

Prior to the Effective Date, the Debtors, after consultation with the Creditors' Committee, may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not materially change the treatment of holders of Claims or Equity Interests.

### 15.6    Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan, after consultation with the Creditors' Committee, prior to the Confirmation Date. Subject to the foregoing sentence, if the Debtors revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be

01:15708708.1

deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

## 15.7 Plan Supplement

The Plan Supplement and the documents contained therein shall be filed with the Bankruptcy Court no later than five (5) calendar days before the deadline for voting to accept or reject the Plan; provided, that the documents included therein may thereafter be amended and supplemented, prior to execution, so long as such amendment or supplement does not materially and adversely change the treatment of holders of Claims. The Plan Supplement and the documents contained therein are incorporated into and made a part of the Plan as if set forth in full herein.

## 15.8 Payment of Statutory Fees

On or before the Effective Date, all fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid in Cash. Following the Effective Date, all such fees shall be paid by the Liquidating Trustee from the Liquidating Trust Assets until the earlier of the conversion or dismissal of the applicable Chapter 11 Case under section 1112 of the Bankruptcy Code, or the closing of the applicable Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code. For the avoidance of doubt, the U.S. Trustee Fees shall be deemed part of the Liquidating Trustee Expenses.

## 15.9 Dissolution of the Creditors' Committee

On the Effective Date, except as provided in this Section 15.9, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to, arising from or in connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's attorneys, accountants, and other agents, if any, shall terminate, except for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith, or any appeal of the Confirmation Order.

## 15.10 Exemption from Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the issuance of any stock, any merger agreements, or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 15.11   Expedited Tax Determination

The Debtors and the Liquidating Trustee are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtors for any and all taxable periods (or portions thereof) ending after the Petition Date through and including the Effective Date.

### 15.12   Exhibits/Schedules

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

### 15.13   Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 15.14   Severability of Plan Provisions

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, at the request of the Debtors have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

### 15.15   Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to its principles of conflict of law.

### 15.16   Conflicts

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

01:15708708.1

**15.17  Reservation of Rights**

If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Chapter 11 Cases are and will be reserved in full.  Any concessions or settlements reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Chapter 11 Cases shall be bound or deemed prejudiced by any such concession or settlement.

**15.18  Post-Confirmation Reporting**

Following confirmation of the Plan, the Liquidating Trustee shall file reports of its activities and financial affairs with the Bankruptcy Court, on a quarterly basis, within thirty (30) calendar days after the conclusion of each such period; provided that the Liquidating Trustee's obligation to file such reports with the Bankruptcy Court shall terminate automatically upon the closing of the Chapter 11 Cases.  Any such reports shall be prepared substantially consistent with (both in terms of content and format) the applicable Bankruptcy Court and U.S. Trustee guidelines on such matters.

**15.19  Notices**

All notices, requests and demands to or upon the Debtors or the Liquidating Trustee must be in writing (including by facsimile transmission) to be effective and, unless otherwise expressly provided under the Plan, will be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received during the normal business hours of the Liquidating Trustee (otherwise any such notice shall be deemed to have been received on the next Business Day) and telephonically confirmed, addressed as follows:

If to the Debtors:

> FBI Wind Down, Inc.
> Attn: Meredith M. Graham, Esq.
> 1 N. Brentwood Blvd., Suite 700
> St. Louis, MO 63105
>
> *with a copy to:*
>
> PAUL HASTINGS LLP
> Park Avenue Tower
> 75 East 55th Street, First Floor
> New York, New York 10022
> Attn:  Luc A. Despins, Esq.
>       Leslie A. Plaskon, Esq.
>       G. Alexander Bongartz, Esq.
>
> *and*

01:15708708.1

PAUL HASTINGS LLP
600 Travis Street, 58th Floor
Houston, Texas 77002
Attn:   James T. Grogan, Esq.

*and*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Attn:   M. Blake Cleary

If to the Liquidating Trust or the Liquidating Trustee:

Liquidating Trust
Attn: Alan D. Halperin
c/o Halperin Battaglia Raicht, LLP
40 Wall Street, 37th Floor
New York, N.Y. 10005

*With a copy to:*

Hahn & Hessen, LLP
Attn: Mark S. Indelicato
488 Madison Avenue
New York, N.Y. 10022

If to the Liquidating Trust Oversight Committee:

Pension Benefit Guaranty Corporation
c/o Hahn & Hessen, LLP
Attn: Mark S. Indelicato
488 Madison Avenue
New York, N.Y. 10022

LF Products PTE Ltd.
c/o Hahn & Hessen, LLP
Attn: Mark S. Indelicato
488 Madison Avenue
New York, N.Y. 10022

Tombigbee Electric Power Association
c/o Hahn & Hessen, LLP
Attn: Mark S. Indelicato
488 Madison Avenue
New York, N.Y. 10022

01:15708708.1

53

After the Effective Date, the Liquidating Trustee may, in its sole discretion, notify Persons that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such Person must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Liquidating Trustee is authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to those Persons who have filed such renewed requests.

[*Remainder of page intentionally left blank.*]

01:15708708.1

Dated: July 9, 2014
　　　　Wilmington, Delaware

Respectfully submitted,

**FBI WIND DOWN, INC.**

(on behalf of itself and the other Debtors and Debtors-in-Possession)

By:　　 _/s/ Meredith M. Graham_
Name: Meredith M. Graham
Title:　Its Officer and Director

01:15708708.1